NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Submitted April 16, 2009[*]
Decided April 28, 2009

Before

JOEL M. FLAUM, Circuit Judge

ILANA DIAMOND ROVNER, Circuit Judge

ANN CLAIRE WILLIAMS, Circuit Judge

No. 08-3135

| | |
|---|---|
| YAODI HU, | Appeal from the United States District |
| Plaintiff-Appellant, | Court for the Northern District of Illinois, Eastern Division. |
| v. | No. 07 C 3822 |
| PETER HUEY, et al., | |
| Defendants-Appellees. | Virginia M. Kendall, Judge. |

O R D E R

In a span of less than 2 years, Yaodi Hu brought 13 separate lawsuits against various defendants in the United States District Court in Chicago. In this case, one of the 13, he sued his landlord and two other tenants who lease office space in the same building. Hu claims that the building owner violated his civil rights by charging exorbitant rent because of his race, see 42 U.S.C. §§ 1981, 1982, and that all three defendants violated federal and

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2).

state antitrust laws and the First Amendment by preventing him from providing or marketing tax-preparation services in the building. The district court granted the defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). We affirm.

We take as true the facts Hu alleges in his amended complaint. Hu and his wife, both ethnically Chinese, operate various businesses in Chicago, including a mortgage brokerage, a real-estate brokerage, and a tax-preparation business. They were running their ventures out of an office less than five miles from Chinatown (Chinatown is about a mile and a half from downtown Chicago), but decided to target the Chinatown market more directly. They leased from Peter Huey additional office space in "a small three story commercial building with front footage of about 45 feet" in the heart of Chinatown. Hu alleges that Huey, who is also ethnically Chinese, had been renting the space to State Farm Insurance and charging the company a "much lower" rent because it "is controlled by white people." Hu's allegations about the commercial real estate market in Chinatown are inconsistent; he first says that Huey's building was "the only space available" in Chinatown, but later explains in his complaint that the number of "available office spaces for rent" in the neighborhood was limited.

A clause in their lease prohibits Hu and his wife from providing tax-preparation services. Huey insisted on including this term because two other tenants, Angela Ip and K.Y. Chau, were also operating a tax-preparation business, and they had negotiated into their lease a restrictive covenant preventing Huey from leasing space in the building to other tax preparers. Ip and Chau have been performing tax-preparation services in Chinatown for over 20 years and are a "formidable market force" in the area. There are, however, a "handful" of other tax preparers in Chinatown, and Ip and Chau charge rates "significantly higher than the average."

In 2006 Hu's wife told a client at the Chinatown office about the tax-preparation services that she and Hu offered. Chau and Ip learned about the conversation and complained to Huey, who informed Hu that discussing tax-preparation services with customers in the Chinatown office violated the lease. In May 2007 Huey instituted eviction proceedings against Hu and his wife. According to the state-court complaint, Huey sought to evict the couple because they owed Huey back rent and other expenses.

On appeal Hu principally argues that the district court erred in dismissing his complaint under Rule 12(b)(6). He first contends that his amended complaint states a claim under § 1 of the Sherman Act because, Hu insists, the restrictive covenant in Huey's lease with Ip and Chau is an illegal restraint on tax-preparation services in the Chinatown market. Restrictive covenants in lease agreements do not violate antitrust laws unless they

unreasonably restrict trade. See Hecht v. Pro-Football, Inc., 570 F.2d 982, 995 (D.C. Cir. 1977); Savon Gas Stations No. Six, Inc. v. Shell Oil Co., 309 F.2d 306, 309 (4th Cir. 1962); Milton R. Friedman & Patrick A. Randolph, Jr., FRIEDMAN ON LEASES § 28:1; Richard A. Lord, 6 WILLISTON ON CONTRACTS § 13:10; see also Leegin Creative Leather Prods., Inc. v. PSKS, Inc., 127 S. Ct. 2705, 2712 (2007) (explaining that § 1 of the Sherman Act forbids only "unreasonable restraints" on trade); BCB Anesthesia Care, Ltd. v. Passavant Mem'l Area Hosp. Ass'n, 36 F.3d 664, 666 (7th Cir. 1994) (same). A restraint on trade is unreasonable if it has an adverse effect on competition in the relevant market. See State Oil Co. v. Khan, 522 U.S. 3, 10 (1997); Chi. Bd. of Trade v. United States, 246 U.S. 231, 238 (1918); 42nd Parallel N. v. E St. Denim Co., 286 F.3d 401, 404 (7th Cir. 2002). In determining the reasonableness of a restraint, relevant considerations include the affected business and the history, nature, and effect of the restraint. State Oil Co., 522 U.S. at 10.

Hu cannot prevail because, according to his own allegations, the restrictive covenant in Huey's lease agreement with Ip and Chau has not adversely affected the market for tax services in Chinatown. The lease agreement restricts the commercial activity of just one building—which Hu describes as "small" and only 45 feet long and three stories tall. It is difficult to see how a restrictive covenant that covers such a small area could adversely impact the entire Chinatown market. See Harold Friedman Inc. v. Thorofare Markets Inc., 587 F.2d 127, 143-44 (3d Cir. 1978) (noting that the size of the area covered by the restrictive covenant in relation to the entire geographic market is relevant to the reasonableness analysis). Furthermore, Hu tells us that a "handful" of other tax preparers operate in Chinatown, so price-sensitive consumers who are dissatisfied that Ip and Chau's prices are "significantly higher than the average" can take their business elsewhere. Hu's lease might prevent him from operating his tax-preparation business in what he perceives to be the most desirable location given its proximity to a major competitor, but antitrust laws operate "not to protect businesses from the working of the market" but to "protect the public from the failure of the market." Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 458 (1993). As Hu's complaint makes clear, the consumers of Chinatown are not harmed by this restrictive covenant.

We also conclude, as did the district court, that Hu cannot state a claim that Huey, Ip, and Chau violated his First Amendment right by stifling his ability to tell his customers about his tax-preparation business. Only those acting under color of law may be held liable for violating a plaintiff's constitutional rights, and Huey, Ip, and Chau are private individuals, not state actors. See Wagner v. Washington County, 493 F.3d 833, 836 (7th Cir. 2007); Thurman v. Vill. of Homewood, 446 F.3d 682, 687 (7th Cir. 2006). Hu argues that Huey became a state actor by filing an eviction proceeding in state court. (Hu has not yet been forced to leave the building; he identifies the Chinatown office as his address on his appellate briefs.) But Hu is wrong. A non-governmental defendant acts under color of

state law only where there is "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001) (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)). Illinois has no interest in the outcome of the eviction proceeding, and it did not transform Hu into a state actor "'merely by holding its courts open to litigation.'" Paisey v. Vitale, 807 F.2d 889, 893 (11th Cir. 1986) (quoting Henry v. First Nat'l Bank of Clarksdale, 444 F.2d 1300, 1309 (5th Cir. 1971)); Skolnick v. Spolar, 317 F.2d 857, 859 (7th Cir. 1963).

Hu next argues that the district court should not have dismissed his claim of race discrimination. Hu asserts that Huey discriminated against him on the basis of his race by charging him higher rent than he would have charged a white tenant. Hu alleges that Huey raised the rent after the former tenant, State Farm Insurance—a company Hu says "is controlled by white people"—moved out. Hu contends that these allegations state a claim under 42 U.S.C. § 1981, which prohibits discrimination on the basis of race in entering into contracts, see Runyon v. McCrary, 427 U.S. 160, 170 (1976), and § 1982, which prohibits racial discrimination in leases of property, see Jones v. Alfred H. Mayer Co., 392 U.S. 409, 436 (1968).

Hu's allegations, however, are contradicted by the lease agreement between Huey and the former tenant. Huey submitted this lease to the district court, and Hu does not dispute its authenticity or argue that it is not the agreement his complaint references. Because Hu's complaint refers to the lease terms and they are central to Hu's race-discrimination claim, we may consider the lease agreement. See Levenstein v. Salafsky, 164 F.3d 345, 347 (7th Cir. 1998); Wright v. Associated Ins. Cos., 29 F.3d 1244, 1248 (7th Cir. 1994). The lease reveals that in 2002 Huey leased the office space Hu now occupies to Mark Yun. Although Yun sells State Farm's insurance products, see www.markyun.com, he signed the lease on his own behalf; State Farm's name appears nowhere on the document and Yun does not purport to bind State Farm to its terms. Because the lease document undermines the premise of Hu's discrimination claim—that State Farm, a "white" company, received a better deal from Huey—the claim must fail.

The district court was correct to dismiss the complaint under Rule 12(b)(6). We have considered Hu's remaining arguments, and conclude that they are meritless.

AFFIRMED