# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-1634

RONALD TIBBS,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO and MARK KOOISTRA,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 2970—**James B. Moran**, *Judge.*

ARGUED APRIL 5, 2006—DECIDED NOVEMBER 27, 2006

Before EVANS, WILLIAMS, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* After being wrongly arrested and held in custody for two days, Ronald Tibbs sued the City of Chicago and Chicago Police Officer Mark Kooistra under 42 U.S.C. § 1983 alleging violations of his Fourth Amendment rights. This appeal concerns Tibbs's allegations that Officer Kooistra subjected him to false arrest, false imprisonment, and excessive use of force. The district court concluded no reasonable jury could find Officer Kooistra behaved unreasonably and accordingly granted summary judgment for the defendants on each of these three claims. We affirm.

## I. Background

Officer Kooistra and two fellow Chicago police officers were patrolling a high-crime public housing project on the west side of Chicago around eleven-thirty on the evening of March 18, 2001. A man who said he lived in the housing project told them of a suspicious person loitering in the neighborhood, near 1510 West Hastings Street. The man said the suspicious person was an African-American male and gave a brief description of his clothing to the officers. The officers proceeded to 1510 West Hastings— just a block or two away—and spotted Tibbs, who fit the general description given by the resident. They stopped him on the street, frisked him, asked for identification, and questioned him about his presence in the area.

Tibbs produced a valid Illinois driver's license identifying him as "Ronald A. Tibbs" and listing his birth date as October 14, 1955. The officers ran a name check on their squad car's computer, and it showed there was an eleven-year-old, unexecuted traffic warrant for a "Ronald L. Tibbs." The warrant indicated "Ronald L. Tibbs" was an African-American male born on January 9, 1949. When the officers questioned Tibbs about the warrant, he replied that he thought it had been taken care of already, apparently confusing this warrant with a traffic violation he had actually committed. Despite the discrepancies in the middle initials and birth dates,[1] the officers arrested Tibbs because his responses to their questions suggested he knew about the warrant, and the warrant's description matched his first and last names, race, and sex.[2] During the short ride to the

---

[1] Undisputed evidence in the record reflects that it is not uncommon for police computer records to contain incorrect or multiple birth dates for suspects named in arrest warrants.

[2] Tibbs says he pointed out to officers that the address and
(continued...)

police station, Tibbs complained once that his handcuffs were too tight, but the officers refused to loosen them.[3]

At the station Tibbs complained once more—this time to an unknown officer not named in this suit—that his handcuffs were too tight, and this officer, too, refused to loosen them. The officers called the police department's central warrants division and verified that the warrant for "Ronald L. Tibbs" was still active. About twenty to twenty-five minutes after arriving at the station, Tibbs was taken to the lockup where his handcuffs were removed. Officer Kooistra had no further contact with him after this point. Tibbs says he experienced redness in his wrists for about a day and a half after the handcuffs were removed. Tibbs spent two days in custody before his father posted a bond for his release. At a later court hearing a judge determined Tibbs was not the person named in the traffic warrant and dismissed the charges against him. Tibbs never sought any medical treatment for his wrists. When he saw a doctor about one month later for a routine physical, the doctor examined his wrists but provided no treatment (presumably because none was necessary).

Tibbs sued the City of Chicago and Officer Kooistra, alleging seven claims for relief. Three counts were dis-

---

[2] (...continued)
physical description contained in the warrant also failed to match him, but he does not support this contention with citation to any admissible evidence as required at the summary judgment stage. *See* FED. R. CIV. P. 56; *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). In fact, the entire "Statement of Facts" section of Tibbs's appellate brief cites only to his amended complaint; mere allegations of a complaint are not evidence. *Nisenbaum v. Milwaukee County*, 333 F.3d 804, 810 (7th Cir. 2003).

[3] The record shows that loosening the handcuffs would have required removing and reapplying them.

missed (two by Tibbs voluntarily, one by the court), and the court granted summary judgment for the defendants on the remaining four counts: false arrest, false imprisonment, excessive use of force, and a separate count seeking to hold the City of Chicago liable for Officer Kooistra's alleged constitutional violations under Illinois statute, 745 ILL. COMP. STAT. § 10/9-102.[4] On appeal Tibbs argues that summary judgment on these four counts was inappropriate because a reasonable jury could find Officer Kooistra violated his Fourth Amendment rights when he was falsely arrested, falsely imprisoned, and subjected to excessive use of force during arrest.

## II.  Discussion

We review the district court's summary judgment order de novo. *Dougherty v. Ind. Bell Tel. Co.*, 440 F.3d 910, 915 (7th Cir. 2006). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We construe the evidence in the light most favorable to Tibbs, the nonmoving party, and draw all reasonable inferences in his favor. *Ashman v. Barrows*, 438 F.3d 781, 784 (7th Cir. 2006).

## A.  False arrest—Unreasonable seizure

Tibbs contends Officer Kooistra unreasonably seized him in violation of the Fourth Amendment when he arrested

---

[4]  745 ILL. COMP. STAT. § 10/9-102 requires Illinois municipalities "to pay any tort judgment or settlement for compensatory damages . . . for which it or an employee while acting in the scope of his employment is liable."

him based on an old traffic warrant that described a suspect with a different middle initial and birth date than his own. " '[W]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest.' " *Hill v. California*, 401 U.S. 797, 802 (1971) (quoting *People v. Hill*, 446 P.2d 521, 523 (1968)); *accord United States v. Marshall*, 79 F.3d 68, 69 (7th Cir. 1996) ("[T]he arrest is constitutional if the arresting officers (1) have probable cause to arrest the person sought and (2) reasonably believe that the person arrested is the person sought.").

Tibbs does not contest the validity of the traffic warrant for "Ronald L. Tibbs," so he concedes Officer Kooistra had probable cause to arrest *that* Ronald Tibbs. The only question here is whether Kooistra reasonably believed that *this* Ronald Tibbs was the person named in the warrant. On this score, "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." *Hill*, 401 U.S. at 804. In *Hill*, the police arrested a man who had a completely different name (Miller) than the true suspect (Hill) and produced identification to prove that fact. *Id.* at 799. The arrestee matched the suspect's physical description, was found alone in the suspect's apartment, and denied any knowledge about stolen guns when a pistol and ammunition were lying in plain view on a living room coffee table. *Id.* The Court noted that "aliases and false identifications are not uncommon" and held there was no Fourth Amendment violation because "the officers in good faith believed Miller was Hill." *Id.* at 803-04.

This circuit's cases have similarly recognized that discrepancies between an arrest warrant and the arrestee's physical appearance, address, and birth date are often insufficient to create a genuine factual dispute about whether arresting officers had probable cause. *E.g.*, *Johnson v. Miller*, 680 F.2d 39, 40-41 (7th Cir. 1982) (white

plaintiff failed to state a Fourth Amendment claim for unlawful arrest where she alleged police twice wrongly arrested her pursuant to a warrant bearing her name and address but describing the targeted person as black); *Patton v. Przybylski*, 822 F.2d 697, 698-700 (7th Cir. 1987) (plaintiff failed to state a Fourth Amendment claim where he alleged police arrested him based on a warrant that bore his name but had a different address and birth date); *Brown v. Patterson*, 823 F.2d 167, 168-69 (7th Cir. 1987) (plaintiff stated no Fourth Amendment claim when he alleged police arrested him because his name was the same as the alias associated with an outstanding arrest warrant that matched his race and gender, even though the birth date and address were different).

Tibbs emphasizes that the traffic warrant had a different middle initial than his, but in *Hill* the police arrested a man who produced identification showing he had a completely different name than that of the actual suspect. *Hill*, 401 U.S. at 799. Tibbs also relies heavily on *Sivard v. Pulaski County*, 959 F.2d 662, 668 (7th Cir. 1992), for the proposition that a defendant officer's mere denial of knowledge that he had arrested the wrong person is insufficient to sustain summary judgment. But *Sivard* reached that conclusion only because the defendant officers also admitted they held the plaintiff in custody without charge for seventeen days. *Id*. Based on the sheer length of Sivard's preindictment detention, a reasonable jury could have inferred that the defendants were aware his detention was unlawful. The exceptional circumstances present in *Sivard* are absent here, and Tibbs points to no evidence to support his allegation that Officer Kooistra actually *knew* he was arresting the wrong Ronald Tibbs. Indeed, Tibbs's own statement at the scene is evidence to the contrary; when the officers asked Tibbs about the warrant, he replied that he thought he had taken care of it already. Tibbs's acknowledgment of the existence of a warrant—the officers could not know it

was a different warrant—makes the arrest objectively reasonable. Based on the evidence in the summary judgment record, no reasonable jury could find Officer Kooistra acted unreasonably when he arrested Tibbs.

## B. False imprisonment—Unreasonable postarrest detention

Where a person is lawfully arrested pursuant to a valid warrant, police officers and jailers have no constitutional duty to investigate whether the arrestee is actually the person named in the warrant. *Baker v. McCollan*, 443 U.S. 137, 143-44 (1979). This is so because "the probable cause standard for pretrial detention is the same as that for arrest," therefore, "a person arrested pursuant to a warrant issued by a magistrate on a showing of probable-cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial." *Id.* at 143. Because Officer Kooistra lawfully arrested Tibbs based on a valid warrant, *Baker* forecloses any due process claim based on unreasonable postarrest detention. *Id.*; *see also Brown*, 823 F.2d at 168-69 (plaintiff who was mistakenly arrested pursuant to a valid warrant and held in custody for forty-eight hours stated no claim for unlawful postarrest detention where his jailers made no attempt to determine whether he was actually the person named in the warrant). In any event, Officer Kooistra had no contact with Tibbs and no responsibility for him after he was taken to the lockup area of the jail some thirty minutes after the arrest, so it is hard to see how he could be held liable based on Tibbs's two-day detention. *See Brown*, 823 F.3d at 169 (arresting officer was not responsible for plaintiff's detention after turning plaintiff over to jailers at the police station).

**C. Excessive use of force**

Tibbs bases his excessive use of force claim entirely on his allegation that he complained to Officer Kooistra that his handcuffs were too tight and Officer Kooistra refused to loosen them. Claims that police officers used excessive force during an arrest are evaluated under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.

We have on occasion recognized valid excessive force claims based on overly tight handcuffs. In *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003), there was evidence that the arresting officers handcuffed the plaintiff so tightly she lost feeling in her hands and refused to loosen the cuffs when she told them of the numbness. *Id.* at 774-75, 781. The plaintiff later underwent two carpal tunnel surgeries she said were necessitated by the handcuffing, and we held summary judgment under these circumstances was inappropriate. *Id.* at 775, 780-81.

In *Herzog v. Village of Winnetka*, 309 F.3d 1041 (7th Cir. 2002), we held the plaintiff was entitled to a jury trial on her excessive force claim where she produced evidence that the arresting officer lacked probable cause for the arrest, shoved her to the ground even though she was not resisting, cracked her tooth by forcing a breath-screening device into her mouth, waited over an hour to loosen handcuffs she complained were too tight, and subjected her to blood and urine testing at a hospital, even though she

had passed all field sobriety tests and had registered a 0.00 Breathalyzer reading. *Id.* at 1043-44. *See also Lester v. City of Chi.*, 830 F.2d 706, 714 (7th Cir. 1987) (a properly instructed jury could have found excessive use of force if it believed plaintiff's testimony that even though she did not resist arrest, officers threatened to punch her, kneed her in the back, dragged her down a hallway, and handcuffed her so tightly her wrists were bruised).

Tibbs does not cite these cases; at any rate, none is analogous to Tibbs's allegations. The plaintiff in *Payne* told the officers her hands were numb and ultimately underwent two surgeries because of wrist injuries caused by the too-tight handcuffs. *Payne*, 337 F.3d at 774-75, 780-81. Here, Tibbs complained only once to Officer Kooistra, gave the officers no indication of the degree of his pain, experienced minimal (if any) injury, and sought no medical care. The plaintiffs in *Herzog* and *Lester* experienced tight handcuffing more akin to the discomfort Tibbs alleges, but the decisions in those cases were hardly based on overly tight handcuffs alone. The *Herzog* and *Lester* plaintiffs presented evidence they had suffered numerous additional injuries, including a cracked tooth, plainly gratuitous blood and urine testing, being kneed in the back, and being dragged down a hallway. *Herzog*, 309 F.3d at 1043-44; *Lester*, 830 F.2d at 714.

The record here indicates the following: Tibbs likely suffered some discomfort and pain from handcuffs that Officer Kooistra applied somewhat too tightly; Tibbs complained to Officer Kooistra once about his handcuffs without elaborating on any injury, numbness, or degree of pain; Tibbs was handcuffed for about twenty-five to thirty minutes (from the time of his arrest to his arrival at the lockup facility); he experienced redness on his wrists for less than two days; and he neither sought nor received medical care for any alleged wrist injury. Tibbs cites no cases in which any court has permitted a plaintiff to reach

a jury based on such mild allegations. We agree with the district court that no reasonable jury could find Officer Kooistra's actions were objectively unreasonable.

In a perfect world police officers would make no errors and innocent citizens like Mr. Tibbs would never be arrested and detained. His mistaken arrest was unfortunate and the inconvenience and indignity he suffered was regrettable. But Officer Kooistra's actions did not violate Tibb's Fourth Amendment rights. The judgment of the district court is AFFIRMED.

A true Copy:

　　　　Teste:

　　　　　　　　　　　_____
　　　　　　　　　　　*Clerk of the United States Court of*
　　　　　　　　　　　*Appeals for the Seventh Circuit*