# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 06-2045

CARL WAGNER,

*Plaintiff-Appellant,*

*v.*

WASHINGTON COUNTY, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 04 C 1034—**Rudolph T. Randa**, *Chief Judge.*

ARGUED JANUARY 24, 2007—DECIDED JULY 12, 2007

Before RIPPLE, ROVNER, and WILIAMS, *Circuit Judges.*

PER CURIAM. Carl Wagner filed suit under 42 U.S.C. § 1983 claiming, as significant here, that his Fourth Amendment rights were violated when sheriff's deputies in Washington County, Wisconsin, arrested him during a town-hall meeting on the belief that his presence violated a protective order awarded to a husband and wife who were also in attendance. The district court granted summary judgment for the deputies after concluding that they had probable cause to arrest Wagner. Although we disagree with the court's legal determination, we affirm the judgment on the alternative ground that the deputies are immune from suit under the doctrine of qualified immunity.

## I. BACKGROUND

In October 2003 husband and wife Jeffrey and Patti Metzger obtained from the Washington County Circuit Court identical "harassment injunctions," *see* WIS. STAT. § 813.125(4), commanding Wagner to "avoid the residence and any premises temporarily occupied" by the Metzgers. One month later the Metzgers planned to attend a Plan Commission meeting in West Bend, Wisconsin, to oppose a "reserved road right of way" on their street. When the Metzgers pulled into the parking lot at West Bend's town hall, where the meeting was to be held, they observed Wagner entering the building. Unsure how to proceed, the Metzgers contacted the Washington County Sheriff's Department, which sent Deputies Christopher Killey and Brian Herbst to the scene.

According to an affidavit submitted by Deputy Killey at summary judgment, Patti Metzger showed Killey a copy of her harassment injunction and informed him that she wished him to enforce it so that she might enter the town hall. Killey thus escorted the Metzgers into the Plan Commission meeting where Wagner already was seated in the front row. After the Metzgers were seated, Deputy Killey approached Wagner and asked him to step into the hallway. Once in the hallway, Wagner confirmed that he was the subject of the harassment injunctions obtained by the Metzgers. Killey told Wagner he was violating those injunctions and must leave the premises, but Wagner, who had a personal interest in one item on the agenda, refused and returned to his seat inside the meeting room.

Still convinced that Wagner was violating the injunctions, Deputy Killey called his commanding officer, who agreed with Killey's assessment. Killey thus approached Wagner inside the meeting room again and asked him to step into the hallway for a second time. After Wagner

complied, Deputy Killey told him he was violating the injunctions and could be arrested if he did not leave the area immediately. Wagner did not leave and instead returned to his seat inside the meeting room. Deputy Killey followed him and told him to leave, but Wagner refused. Thus, Killey and Deputy Herbst arrested Wagner and took him to the county jail where he was charged under WIS. STAT. § 813.125(7) with violating a harassment injunction. He was released two hours later after posting bail.

On October 21, 2004, Wagner filed suit against Washington County, the county's insurance company, Deputy Killey, Deputy Herbst, and the Metzgers. (Wagner actually named the sheriff's department instead of the county, but the department is a division of the county and not a justiciable entity. *See Whiting v. Marathon County Sheriff's Dept.*, 382 F.3d 700, 704 (7th Cir. 2004)). Wagner claimed that the Metzgers conspired with Deputies Killey and Herbst to arrest him without probable cause in violation of the Fourth Amendment. In addition, Wagner asserted state-law claims for false arrest, defamation, abuse of process, intentional and negligent infliction of emotional distress, and false imprisonment. All of the defendants moved for summary judgment.

The district court granted the defendants' motions for summary judgment, holding that the deputies had probable cause to arrest Wagner and were therefore required to arrest him under WIS. STAT. § 813.125(6). The court thus dismissed the Fourth Amendment claim against the county, the county's insurer, and the deputies. The court also dismissed Wagner's federal claim against the Metzgers, reasoning that the absence of a Fourth Amendment violation precluded him from establishing an essential element of his conspiracy theory. The court then declined to exercise supplemental jurisdiction over Wagner's state-law claims.

## II. ANALYSIS

We review the district court's grant of summary judgment de novo. *Tibbs v. City of Chicago*, 469 F.3d 661, 663 (7th Cir. 2006). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). On review we must construe the evidence in the light most favorable to Wagner, the non-moving party, and draw all reasonable inferences in his favor. *See Tibbs*, 469 F.3d at 664.

To begin, neither the county or its insurance company were viable parties to Wagner's claim under § 1983. In order to prevail against the county, Wagner would have to demonstrate that he suffered a deprivation of his constitutional rights based on some official policy, widespread custom, or deliberate act of a county decision-maker of the municipality or department, *see Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Davis v. Carter*, 452 F.3d 686, 691 (7th Cir. 2006), which Wagner failed to do. Furthermore, although the county's insurance company may be obliged to indemnify county officials found liable in a suit under § 1983, the insurer is not an appropriate party to the suit because it is not a state actor, nor did it deprive Wagner of any constitutional rights while acting under the color of a state statute. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-56 (1978); *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006).

Similarly, the federal claim against the Metzers was properly dismissed at summary judgment. Although Wagner argues that the Metzgers acted under color of state law by conspiring with Deputies Killey and Herbst to violate his rights under the Fourth Amendment, there

is no evidence in the record to support this contention. The Metzgers simply called the sheriff's department after seeing Wagner at the town-hall meeting and showed Mrs. Metzger's injunction to Deputy Killey. This interaction is not evidence of a conspiracy.

Thus, the only question left is whether the district court appropriately concluded that Deputies Killey and Herbst had probable cause to arrest Wagner. Probable cause to arrest is an absolute defense to any claim against police officers under § 1983 for wrongful arrest, even where the defendant officers allegedly acted upon a malicious motive. *Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006). Police ordinarily have probable cause if, at the time of the arrest, the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)*; see Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1013 (7th Cir. 2006); *Anderer v. Jones*, 385 F.3d 1043, 1049 (7th Cir. 2004). In evaluating whether an officer had probable cause, we "must consider the facts as they would have reasonably appeared to the arresting officer 'seeing what he saw, hearing what he heard' at the time of the incident." *Driebel v. City of Milwaukee*, 298 F.3d 622, 643 (7th Cir. 2002) (quoting *Richardson v. Bonds*, 860 F.2d 1427, 1431 (7th Cir. 1988)); *accord United States v. Parra*, 402 F.3d 752, 764 (7th Cir. 2005).

Here, Deputies Killey and Herbst knew that Wagner had entered the town hall prior to the Metzgers to attend a meeting of the Plan Commission, that the Metzgers wished to attend the meeting, and that they possessed harassment injunctions commanding Wagner to "avoid . . . any premises temporarily occupied by [the Metzgers]." The intent

of the issuing court, as is evident from the language of the harassment injunctions, was to stop Wagner from actively harassing the Metzgers. Thus, if Wagner had followed the Metzgers to the public meeting and entered *after* them, there might be more support for an arrest (assuming one ignores any First Amendment implications) than in this situation where Wagner arrived at a meeting prior to the Metzgers and was there because an item on the agenda related directly to him and his family. *See Bachowski v. Salamone*, 407 N.W.2d 533, 538-39 (Wis. 1987) (explaining that for conduct to violate Wisconsin's harassment injunction statute, Wis. Stat. § 813.125, it must be intentional and devoid of "any legitimate purpose").

We cannot agree with the district court that the deputies had probable cause to arrest Wagner in this situation. If we were to do so, the possibilities for the Metzgers to use the injunction to harass *Wagner* would be limitless; the Metzgers could follow Wagner around town and force him to leave stores, restaurants, movie theaters, hospitals, et cetera. The district court, by selectively quoting the language of the harassment injunctions, overstated the command of those court orders. The orders do not prohibit Wagner from "being on" any premises occupied by the Metzgers; rather, the orders command that he *avoid* such premises. Thus, we conclude that upholding the district court's assessment of probable cause would undermine, not promote, the state legislature's goal in enacting the harassment statute of preventing "repeated assaults on the privacy interests of individuals without unnecessarily infringing on their freedom to express themselves through speech and conduct." *Bachowski*, 407 N.W.2d at 538.

That said, we nonetheless uphold the judgment in favor of the deputies because we conclude that they are immune from suit under the doctrine of qualified immunity. As the Supreme Court has explained, "the qualified im-

munity defense . . . provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *accord Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 761 (7th Cir. 2006) (reiterating that "the doctrine of qualified immunity leaves ample room for mistaken judgments by police officers" (citations and quotation marks omitted)). Thus, so long as "officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley*, 475 U.S. at 341; *accord Wollin v. Gondert*, 192 F.3d 616, 625-26 (7th Cir. 1999).

Examining the facts, not as an omniscient observer would perceive them but as they would have appeared to a reasonable person in the position of the arresting officers, *see Mustafa*, 442 F.3d at 547, we can understand how the deputies could believe that Wagner was violating a harassment injunction that required him to "avoid . . . any premises temporarily occupied" by the Metzgers when he remained in the town hall after the Metzgers arrived. That the deputies' supervisor—and even the district court—agreed with their assessment only strengthens the argument that the deputies should be protected from civil liability by qualified immunity.

## III.  CONCLUSION

Accordingly, we AFFIRM the decision of the district court.

A true Copy:

       Teste:

                 _____
                 *Clerk of the United States Court of*
                 *Appeals for the Seventh Circuit*