In the

# United States Court of Appeals
### For the Seventh Circuit

_____

No. 13-1511

MITCH ROONI,

*Plaintiff-Appellant,*

*v.*

BRADLEY BISER,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 11-cv-827-bbc — **Barbara B. Crabb**, *Judge.*

_____

ARGUED SEPTEMBER 20, 2013 — DECIDED FEBRUARY 4, 2014

_____

Before WOOD, *Chief Judge*, and BAUER and FLAUM, *Circuit Judges*.

WOOD, *Chief Judge*. Deer hunting is serious business in the state of Wisconsin. Although the hunters and the state game wardens may coexist peacefully most of the time, in this case they did not. A dispute erupted between Mitch Rooni, a hunter, and Bradley Biser, a warden employed by the Wisconsin Department of Natural Resources (DNR), and it has now wended its way into federal court. According to

Rooni, on November 19, 2005, Biser arrested him without probable cause and used excessive force against him both before and after the arrest. Asserting that his civil rights had been violated by these actions, Rooni brought suit under 42 U.S.C. § 1983 against Biser; Biser responded with a motion for summary judgment in his favor on all counts. The district court granted the motion with one exception, for the charge that Rooni used excessive force before the arrest. The parties then jointly filed a motion to dismiss the pre-arrest excessive-force claim with prejudice. The district court agreed to do so and entered a final judgment in Biser's favor.

Rooni contends on appeal that the district court erred by granting summary judgment on the unlawful-arrest claim and the claim of excessive force after the arrest in connection with his handcuffing. He also argues that the court was mistaken to conclude that Biser was entitled in any event to qualified immunity. We conclude that the district court correctly granted summary judgment in Biser's favor on the handcuffing claim; at a minimum, Biser is entitled to qualified immunity on this part of the case. Rooni's arrest claim, however, is another matter. Taking his reasonable allegations as true, as we must, we conclude that neither probable cause nor "arguable" probable cause supported Rooni's arrest. This means that a trier of fact could conclude (if it accepted Rooni's evidence) that Biser violated Rooni's clearly established constitutional rights in so arresting him. We thus affirm in part and remand in part to the district court for further proceedings on the wrongful-arrest claim.

**I**

The account of the facts that follows accepts Rooni's version for present purposes, without of course vouching for anything. On November 19, 2005, Rooni, accompanied by his son, Peter Rooni, and a friend, Brad Weerts, went deer hunting in northern Wisconsin. Their trip was successful: they left with two bucks and a doe loaded onto a trailer attached to Weerts's truck.

The trouble began when the group stopped to register the deer at a DNR post located at a gas station in Brule, Wisconsin. Christopher Sand and Kevin Feind, two DNR employees, met and congratulated Rooni on his hunt; Sand tagged and aged the deer. Rooni then went into the gas station to buy another tag, which he needed so that the party could continue hunting. While Rooni was there, Biser arrived at the station, walked inside, and asked Rooni how many deer he had downed. Rooni, evidently not a fan of Biser or perhaps game wardens generally, did not respond. Biser then proclaimed, loudly enough for everybody in the station to hear, that Rooni did not like the DNR. Rooni responded in kind, saying something like "no, just people like you." Biser made further comments but Rooni tried to ignore them.

Biser eventually left the gas station, hotdog in hand, and approached Sand, who was registering the deer in Weerts's trailer. Biser leaned up against the trailer while speaking to Sand. Rooni then came out of the gas station and approached Biser, who was still leaning against the trailer. Rooni stood five or six feet away from Sand and waited, believing that Biser was going to question him, but Biser did not turn to look at Rooni or say anything. At that point,

Rooni attempted to walk around Biser. He had to pass very closely, because there was slush on the ground with a few trails beaten down by pedestrians. Biser was leaning right next to one of those trails. As Rooni walked by, Biser extended his leg to block Rooni's way. Rooni stopped, took a few steps closer, and looked at Biser, who remained silent. Rooni then said, "Brad, get off the trailer and let me get through," and "brushed" between Biser and the trailer. As Rooni brushed past Biser on the trail, Biser moved back and spit a piece of hotdog at Rooni. (Biser strongly disputes this account, but this is not the time and we are not the ones who can say what "really" happened.) Biser accuses Rooni of pushing him, but Rooni denies doing so.

As the back-and-forth escalated, Biser grabbed Rooni. After telling Biser to get his hands off of him, Rooni pushed down, with his palms facing himself, in an attempt to detach Biser's hands from his person. In response, Biser put his hands back on Rooni and grabbed Rooni's stomach through his shirt. Rooni again attempted to push Biser's hands away. Biser pushed Rooni against the trailer and started hitting his hands and arms. As he was hitting Rooni, Biser repeatedly told Rooni not to grab *him*, though it was Biser who had been hitting Rooni. At this point, Rooni's son came over, and Rooni told him to call the police. In response, Biser told Rooni he was under arrest. While in the process of handcuffing Rooni, Biser grabbed Rooni by the back of the neck and jerked him back, almost pulling Rooni over. Biser then handcuffed Rooni with double-locked handcuffs (a type that cannot be tightened or loosened). Biser moved Rooni to his truck, at which point Rooni complained that the handcuffs were too tight. Biser responded by telling him to "shut up." Soon Deputy Sheriff Alan Peterson arrived, and Rooni again

said that the handcuffs were on too tight and hurt; he added that Biser had purposefully twisted the handcuffs so that they would hurt him. Although Peterson did not believe that the handcuffs were too tight, he offered to place Rooni in shackles so that he could be handcuffed in the front instead of from behind. Rooni agreed, and when Peterson changed the handcuffs, Rooni pointed out the red marks on his wrists. Peterson transported Rooni to the Douglas County jail, telling him that he had been arrested for disorderly conduct and obstructing an officer. While in the jail, Rooni did not seek medical attention. He did, however, observe blood and blister-type discoloration under his skin, his hands were numb and painful, and his fingers were swollen for a few days.

Rooni was charged with disorderly conduct, but the charges were dismissed. In April 2006, Rooni was diagnosed with carpal tunnel syndrome.

## II

Because this case reaches us from a grant of summary judgment, we review the district court's decision *de novo*, taking all facts and reasonable inferences in favor of the non-moving party. *Marion v. City of Corydon, Ind.*, 559 F.3d 700, 704 (7th Cir. 2009). As the party with the burden of proof, Rooni had to present evidence that, if believed by the trier of fact, would support a finding that his constitutional rights were violated. See *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) (citing *McAllister v. Price,* 615 F.3d 877, 881 (7th Cir. 2010)). One acceptable type of evidence is the plaintiff's own affidavit, as long as it otherwise contains information that would be admissible if he were testifying directly. There is nothing suspect about the fact that such affidavits

are normally "self-serving." See *Hill v. Tangherlini*, 724 F.3d 965, 967 & n.1 (7th Cir. 2013); *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003).

### A. Unlawful Arrest Claim

Probable cause is an absolute defense to a claim of wrongful arrest under section 1983. *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008). A police officer has probable cause to arrest if, at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to permit a prudent person to believe that the suspect had committed, is committing, or is about to commit an offense. *See id.* at 686; *Wagner v. Washington County*, 493 F.3d 833, 836 (7th Cir. 2007) (*per curiam*) (citing *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). "The probable cause determination must be made by a jury 'if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them.'" *Chelios*, 520 F.3d at 686 (citing *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993).

Because the district court jumped directly to the qualified immunity inquiry, it assumed (as it was permitted to do under *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)) that Rooni's actions did not give Biser probable cause to arrest him for disorderly conduct. We find it useful, however, to take a closer look at that question as we move through the immunity inquiry.

The district court found that even though it was "undisputed that plaintiff gave defendant a sudden verbal command 'in a loud voice,'" probable cause for the arrest would clearly have been lacking if Rooni had done no more than shout at Biser. But, the district court thought, there was

more: after the shout Rooni "brushed" against Biser. Yet the court acknowledged that it "might be obvious that disorderly conduct requires more than accidental physical contact with an officer." Here, as the district court saw it, the combination of the accidental physical contact and the confrontational and loud statements made it "more reasonable" to interpret plaintiff's actions as threatening and disruptive. Coupled with Rooni's act of pushing Biser's hands away from him, the court thought that this amounted to at least arguable probable cause for the arrest. In order to evaluate this conclusion, we take a closer look at each of these ingredients and then at the way they blended together.

1. Rooni's Verbal Comment

There is a fundamental problem with the district court's reliance on Rooni's alleged sudden and loud statement: Rooni denies that he yelled or spoke in a confrontational way, and a trier of fact would be entitled to believe Rooni's account. "We have warned before of falling for the trap of weighing conflicting evidence during a summary judgment proceeding." *Payne*, 337 F.3d at 771. Rooni's proposed finding of fact described the encounter this way: "When defendant Biser said nothing to Mitch Rooni, Mitch Rooni said to defendant Biser: 'Brad, get off the trailer and let me get through.'" Plaintiff's Proposed Finding of Fact at ¶ 22, *Rooni v. Biser*, No. 11-cv-827-bbc (W.D. Wis. October 15, 2012). The word "said" gives no information about tone of voice or decibel level. If, as Rooni contends, his comment was not delivered in a confrontational way, then nothing about the comment would support a finding of probable cause to arrest.

2.  Brushing

While both sides report that there was physical contact between Rooni and Biser as Rooni attempted to pass Biser using the trail through the slush, Biser says that it was significant and Rooni depicts it as glancing. An unintentional touching alone does not give rise to probable cause for a disorderly conduct arrest. Wisconsin's disorderly conduct statute provides that "whoever, in a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance is guilty of a Class B misdemeanor." Wis. Stat. § 947.01. The Supreme Court of Wisconsin has noted that the statute contains two elements: "(1) conduct of the type enumerated in the statute or similar thereto, and (2) the conduct must be engaged in under circumstances which tended to cause or provoke a disturbance." *In re A.S.*, 626 N.W.2d 712, 716 (Wis. 2001). Simply brushing by another person – an act which we understand as involving only *de minimis* contact – cannot be characterized as the type of conduct described in Wisconsin's statute. A similar analysis applies to the charge of obstructing an officer in violation of Wis. Stat. § 946.41, which broadly prohibits "knowingly resist[ing] or obstruct[ing] an officer while such officer is doing any act in an official capacity and with lawful authority." *Id.* § 946.41(1). The obstruction must, at a minimum, be "knowing," and there is nothing in the accidental brush that Rooni describes that could meet this criterion. *Cf. State v. Ferguson*, 767 N.W.2d 187, 199 (Wis. 2009) (describing conduct covered by the statute); see also *Gonzalez v. City of Elgin*, 578 F.3d 526, 538 (7th Cir. 2009) (Illinois law). That is enough to defeat

summary judgment on Rooni's arrest claim, since we must take the facts in the light most favorable to him.

###   3.   Attempting to Remove Biser's Hands

The district court also thought it significant that Rooni tried to free himself from Biser by pushing Biser away. But here again, the overall picture shifts, depending on whose version of the facts is credited. Rooni alleged that Biser first spit a piece of hotdog directly at him and then proceeded to grab and hit him. Rooni tried to push Biser away *after* Biser grabbed him. At that point, Rooni told his son to call the police, and Biser announced that Rooni was under arrest. If a jury believes Rooni's account, then it would find that all Rooni tried to do was to disengage from Biser's assault. As we have noted in the past, "police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever." *Payne*, 337 F.3d at 780 (quoting *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996)).

Since we have concluded that neither the alleged verbal comment, nor the brush-by, nor the effort to disengage from Biser's grasp was sufficient to support probable cause for Rooni's arrest – as always, taking the facts in the light most favorable to Rooni – we also find that taken together these three elements are not enough to support summary judgment in Biser's favor on the claim of unlawful arrest.

###   4.   Qualified Immunity

This leaves the question whether Biser is entitled to qualified immunity on this part of the case. "To determine whether a defendant is entitled to qualified immunity, courts must address two issues: (1) whether the defendant violated the plaintiff's constitutional rights and (2) whether the right

at issue was clearly established at the time of the viola-
tion."*Stainback v. Dixon*, 569 F.3d 767, 770 (7th Cir. 2009) (cit-
ing *Phelan v. Vill. of Lyons*, 521 F.3d 484, 487 (7th Cir. 2008)).
When the facts of this case are taken in the light most favor-
able to him, Rooni has shown that Biser violated his consti-
tutional rights by arresting him without probable cause.
Moreover, under his version of the facts, Rooni never raised
his voice and was merely attempting to pass Biser on the
trail surrounded by slush when Biser spit hotdog on him
and then grabbed and began hitting his upper body. Before
Biser ever told Rooni he was under arrest, Rooni attempted
to defend himself against this battery by trying to push his
hands down his own body, in the hopes of removing Biser's
hands. As Rooni describes it, he never conducted himself in
a disorderly manner. Under these circumstances, Biser
should have been on notice that Rooni had a right to be free
from arrest. See, *e.g.*, *Pourghoraishi v. Flying J, Inc.*, 449 F.3d
751, 762 (7th Cir. 2006) (an officer did not have probable
cause to arrest where the individual "did not raise his voice,
use profanity, make unreasonable noise, or otherwise engage
in any behaviors prohibited by the disorderly conduct stat-
ute"). We conclude that Biser is not entitled to qualified im-
munity on this claim.

   B.  Handcuffing

   1.  Excessive Force

Rooni also alleges that his constitutional rights were vio-
lated because Biser used excessive force when he handcuffed
Rooni. A person has the right to be free from an officer's
knowing use of handcuffs in a way that would inflict unnec-
essary pain or injury, if that person presents little or no risk
of flight or threat of injury. See *Payne*, 337 F.3d at 778, *Stain-*

*back*, 569 F.3d at 772. The question, however, is whether the officer knows that he is inflicting such pain. An officer cannot be expected to respond to an injury about which he is unaware. Nonetheless, knowledge may be inferred "from the nature of the act itself." *Stainback*, 569 F.3d at 772.

We have seen a number of cases in which arrestees have made similar complaints about handcuffing. See, *e.g., Sow v. Fortville Police Dept.*, 636 F.3d 293 (7th Cir. 2011) (dismissed where plaintiff complained once but presented no evidence that he elaborated on the pain to the defendant); *Tibbs v. City of Chicago*, 469 F.3d 661 (7th Cir. 2006) (dismissed excessive force claim where plaintiff complained the handcuffs were on too tight but did not indicate the degree of pain). Giving Rooni the benefit of the doubt, it is possible (though we do not hold this definitively) that the Fourth Amendment required Biser to take Rooni's complaints more seriously.

### 2. Qualified Immunity

Once again, this brings us to the question of qualified immunity, and in particular, to the issue whether Rooni's right to be free of the degree of force Biser used after the handcuffs were applied was clearly established. Qualified immunity gives government officials "the benefit of legal doubts." *Elliott v. Thomas*, 937 F.2d 338, 341 (7th Cir. 1991). Our decisions in *Tibbs* and *Sow, supra,* both found in the officer's favor on similar allegations. It is difficult in borderline cases to say that a right to be free from a particular degree of force was "clearly established." Here, we conclude that there was nothing that would have alerted Biser to the fact that a constitutional violation was looming. We therefore conclude that Biser was entitled to qualified immunity on Rooni's complaint of excessive force in connection with the hand-

cuffing, and thus that summary judgment in Biser's favor was proper on this part of the case.

### III

In closing, we cannot resist commenting that it strikes us as unfortunate that the kind of dust-up that gave rise to this case can wind up in federal court. Nevertheless, as the Supreme Court reminds us, we have an "unflagging duty" to hear cases that fall within our jurisdiction, and the broad principles that underlie the right of citizens to be free from unlawful arrests and the use of excessive force by public officers are far from trivial. We thus AFFIRM the judgment of the district court on the handcuffing and REVERSE and REMAND the unlawful-arrest decision for further proceedings consistent with this opinion.