In the

# United States Court of Appeals

### For the Seventh Circuit

No. 16-1988

THOM D. HOWELL,

*Plaintiff-Appellee,*

*v.*

SHAWN SMITH,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:13-cv-00045-JTM-PRC — **James T. Moody**, *Judge.*

ARGUED SEPTEMBER 29, 2016 — DECIDED APRIL 10, 2017

Before WOOD, *Chief Judge*, and RIPPLE and WILLIAMS, *Circuit Judges.*

RIPPLE, *Circuit Judge*. On May 15, 2011, Officer Shawn Smith of the Highland, Indiana Police Department received a call from his dispatcher, alerting him to a road rage incident involving the discharge of a firearm. He later came upon a car matching the description and conducted a "high-risk traffic

stop."[1] Officer Smith placed Mr. Howell, the occupant of the car, in handcuffs and detained him until other officers brought the alleged victim to the scene.[2] The victim positively identified Mr. Howell and his vehicle as involved in the road rage incident. Nonetheless, the officers found no weapon and decided to release Mr. Howell. The whole episode lasted approximately thirty minutes.

Mr. Howell initially brought this action in state court, alleging that the officers' treatment had aggravated a preexisting shoulder condition, which became worse with time and required multiple surgeries. Following the transfer of the proceedings from state to federal district court,[3] Officer Smith moved for summary judgment on the ground of qualified immunity. The district court denied the motion, and Officer Smith filed this interlocutory appeal.[4]

We respectfully disagree with the district court's decision to deny Officer Smith's immunity claim. In our view, Officer Smith's decision to place Mr. Howell, then implicated in a serious crime involving the discharge of a weapon, in handcuffs and to keep him in handcuffs until satisfied that he was not a

---

[1] R.22-1 at 38.

[2] We refer to the victim as an "alleged victim" because it is unclear whether the altercation occurred at all. Appellee's Br. 14. For ease of reading, however, we will refer only to the "victim."

[3] The district court's jurisdiction was premised on 28 U.S.C. §§ 1331 and 1343.

[4] Our jurisdiction is premised on the collateral order doctrine. A district court's determination that a defendant is not entitled to qualified immunity is a final order for the purposes of 28 U.S.C. § 1291. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

threat did not violate the Fourth Amendment. Therefore, under the doctrine of qualified immunity, the federal count in the complaint must be dismissed. Accordingly, we reverse the judgment of the district court and remand the case for further proceedings.

# I

## BACKGROUND

### A.

Mr. Howell, a Navy veteran and high school teacher in his early sixties, has had multiple shoulder surgeries, including a complete replacement of his right shoulder. Prior to the encounter at issue in this appeal, he was able to stretch his right arm, to write on a blackboard, and to lift up to five or six pounds with his right arm. His left shoulder was in better condition; he usually was able to place his left arm behind his back.

The stop at issue here took place on May 15, 2011. While Officer Smith was on routine patrol in the Town of Highland, Indiana, his dispatcher advised him of a reported road rage incident. According to the dispatcher, the victim had reported that the driver of a tan Trailblazer ahead of him on the road had fired at him while the two vehicles were traveling northbound on Kennedy Avenue in Griffith, Indiana. The dispatcher described the suspect driver, alone in the vehicle, as a white male with facial hair and stated that the vehicle had an older Indiana blue license plate. Officer Smith later encountered a vehicle and driver matching this description. He activated his patrol car's overhead lights and stopped the car.

Officer Smith treated this stop as a "high-risk traffic stop": He ordered Mr. Howell to step out of his vehicle, to place his hands on his head, to walk backwards toward him, and then to kneel on the ground.[5] Mr. Howell complied with all orders. While Mr. Howell was kneeling, Officer Smith handcuffed his hands behind his back. He then asked Mr. Howell whether he had been involved in a road rage incident; Mr. Howell denied any involvement. Officer Smith placed Mr. Howell in the back of the squad car.

There is some disagreement as to what, if anything, Mr. Howell said as he was placed in handcuffs. According to Officer Smith, Mr. Howell "did not complain of any pain in his shoulders or arms nor did he complain of any pain, soreness or injuries to his shoulders at any time."[6] Mr. Howell, on the other hand, maintains that he told the officer that "I can't stretch my arm behind my back that way"[7] and that he "had just had surgery with [his] shoulder."[8] He additionally contends that he later told an officer, other than Officer Smith, that he was "sore"[9] or in "pain,"[10] although he is inconsistent on the exact language that he used and unclear as to when this

---

[5] R.22-1 at 38.

[6] *Id.*

[7] *Id.* at 16.

[8] *Id.* at 18.

[9] *Id.* at 27, 30.

[10] R.23-3 at 2.

conversation took place, other than stating that it was with a Griffith police officer.[11]

Officer Smith radioed Sergeant Banasiak, who was with the victim at a nearby shopping center or strip mall. He asked whether the stopped vehicle was the one from which a shot had been fired. The victim "replied that it sounded like it."[12] When Sergeant Banasiak and the victim arrived at the scene shortly thereafter, the latter confirmed the identification.

Officer Smith searched Mr. Howell and did not find a weapon. Mr. Howell also provided consent to search his vehicle, but a search failed to locate a firearm. Throughout this time, the victim remained adamant about his identification and advised both Sergeant Banasiak and Officer Smith that Mr. Howell was the individual who had shot at him in Griffith. Attempting to explain the absence of a firearm, the victim suggested that Mr. Howell must have thrown his weapon out of his vehicle.

Nonetheless, once the officers ascertained all of these facts, which involved removing Mr. Howell from the car several times, Sargent Dawes of the Griffith Police Department, in whose jurisdiction the offense would have taken place, decided to release Mr. Howell.

The entire detention lasted approximately thirty minutes. At no point did Officer Smith feel threatened in any way. Mr. Howell maintains that, since his detention, he has suffered mental anguish and has undergone multiple shoulder-related surgeries.

---

[11] R.22-1 at 30.

[12] *Id.* at 38.

**B.**

Mr. Howell brought this action, alleging a "violation of his State and Federal Constitutional Rights, as provided by the Indiana and Federal Constitutions, Statutes and case law."[13] Relying on state law causes of action, Mr. Howell also sought damages for battery, false arrest, false imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress, among other claims.

Because the complaint contained a count alleging a federal question, all the defendants[14] removed the action to the United States District Court for the Northern District of Indiana. *See* 28 U.S.C. § 1441(a). Soon thereafter, the defendants moved for summary judgment, and Mr. Howell abandoned all claims other than the federal excessive force claim against Officer Smith and three of the state claims.[15]

On March 31, 2016, the district court denied the motion for summary judgment. It concluded that Officer Smith's knowledge of Mr. Howell's injury precluded the defense of qualified immunity and noted that there was "a question of

---

[13] R.1 at 2.

[14] At the time that the district court ruled on the summary judgment motion, only Officer Smith and the Town of Highland remained as defendants. R.27 at 1–2 (explaining the remaining claims).

[15] As explained by the district court in its summary judgment order, the "only claims that remain[ed] for resolution on defendants' motion [were] Howell's claims against defendant Officer Smith for excessive force, and against both Smith and the Town of Highland for battery, intentional infliction of emotional distress ('IIED'), and negligent infliction of emotional distress ('NIED')." *Id.*

fact as to whether the force used was excessive."[16] Officer Smith thereafter timely filed an interlocutory appeal.

## II

## DISCUSSION

The standards that govern our review of the district court's decision are well settled. We review de novo the district court's denial of summary judgment on qualified immunity grounds, asking whether viewing the facts in the light most favorable to the plaintiff, the defendants nonetheless were entitled to qualified immunity as a matter of law. *Estate of Escobedo v. Bender*, 600 F.3d 770, 778 (7th Cir. 2010). Qualified immunity shields federal and state officials from money damages unless a plaintiff demonstrates that the official violated a statutory or constitutional right *and* that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). A right is clearly established when existing precedent has "placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). To meet his burden on the second prong, a plaintiff must "show either a reasonably analogous case that has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand or that the violation was so obvious that a reasonable person necessarily would have recognized it as a violation of the law." *Chan v. Wodnicki*, 123 F.3d 1005, 1008 (7th Cir. 1997). This requirement does not mean that a plaintiff must be able to point to a case "on all fours" with the defendant officer's misconduct. *See*

---

[16] *Id*. at 3.

*Hope v. Pelzer*, 536 U.S. 730, 741 (2002). But there must be set-tled authority that would cause him to understand the illegal-ity of the action. *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).

We may rest our decision on either prong of the qualified immunity doctrine. *See al-Kidd*, 563 U.S. at 735. Here, in the hope that our decision will provide meaningful additional guidance to police officers operating in the field, we address the first prong and determine whether Mr. Howell suffered a deprivation of a federal constitutional right.

Mr. Howell correctly bases his argument on the Fourth Amendment's reasonableness standard.[17] That standard gov-erns whether law enforcement officers employed excessive force during an arrest, an investigatory stop, or any other type of seizure. *Stainback v. Dixon*, 569 F.3d 767, 771 (7th Cir. 2009). In evaluating the reasonableness of an officer's actions, we must evaluate the totality of the circumstances, *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003), and undertake a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake," *Stainback*, 569 F.3d at 772 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The nature and extent of the force that may be used depends upon the circumstances surrounding an arrest, in-cluding "the severity of the crime at issue, whether the sus-pect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempt-ing to evade arrest by flight." *Id.* In assessing the facts, we must recognize that officers often need to make split-second

---

[17] Mr. Howell makes no argument concerning his allegations under the Indiana Constitution.

judgments based on rapidly developing events. *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 685 (7th Cir. 2007). We measure the officer's conduct against a standard of "objective reasonableness," that is "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 392, 396–97.

The parties agree that Officer Smith had reasonable suspicion to detain Mr. Howell. Their dispute centers on the officer's use of handcuffs to restrain him during the detention. Here, we believe that the general principles are clear. We have held that "[a] person has the right to be free from an officer's knowing use of handcuffs in a way that would inflict *unnecessary* pain or injury, *if* that person presents little or no risk of flight or threat of injury." *Rooni v. Biser*, 742 F.3d 737, 742 (7th Cir. 2014) (emphasis added). We also have recognized a limited set of circumstances in which handcuffs are appropriate without converting a *Terry* stop into a full arrest. Chief among them is officer safety and the possibility of the presence of a weapon. *See, e.g.*, *United States v. Smith*, 697 F.3d 625, 631–32 (7th Cir. 2012) (explaining that a suspected bank robber was left with one agent while others chased accomplices); *United States v. Bullock*, 632 F.3d 1004, 1016 (7th Cir. 2011) (noting that extra caution was warranted because of probable presence of drugs and possibility of violent behavior); *United States v. Shoals*, 478 F.3d 850, 853 (7th Cir. 2007) (per curiam) (approving use of drawn weapons and handcuffs where suspect matched description of late-night 911 report of individual engaging in gun fire, was wearing a coat indoors, and attempted to hide from police); *United States v. Stewart*, 388 F.3d 1079, 1085 (7th Cir. 2004) (approving use of handcuffs where defendant matched description of armed perpetrator of recent bank robbery and behaved suspiciously).

The district court focused on our decision in *Rabin v. Flynn*, 725 F.3d 628 (7th Cir. 2013). In that case, after a police officer observed Rabin carrying a holstered firearm in public, the police stopped and handcuffed him. Rabin was a licensed private investigator with a permit to carry a handgun. When asked, he provided the police with his license and was at all times cooperative. His detention was prolonged because the officers could not confirm immediately the authenticity of the tendered license. Rabin remained, at all times, cooperative. While in custody, he told one of the officers that he had a "bad neck" and a "bad hand in the past," and that the cuffs were too tight. *Id.* at 631. Noting that "Rabin was already handcuffed," we held that "no reasonable officer who was aware of Rabin's medical conditions would have believed that exacerbating Rabin's medical problems (i.e., by keeping the handcuffs as tight as they were) was necessary to ensure safety, and that doing so would be permissible under clearly established law." *Id.* at 636.

The *Rabin* decision does not control this case. The absence of a firearm on Mr. Howell's person was not the only danger that Officer Smith had to consider. The officer had received a report of an armed road rage incident involving the discharge of a firearm. Residual anger and, indeed, irrationality often accompany such episodes, and Officer Smith had to protect himself and the public from such a contingency. The show-up encounter between the victim and Mr. Howell at the scene of the stop also was a relevant factor for Officer Smith to consider in determining how to secure Mr. Howell. Ensuring the security of the alleged perpetrator and the safety of the victim in such a circumstance is an obvious consideration in an officer's decision making. Indeed, during this show-up, the victim affirmatively identified Mr. Howell as the perpetrator to

the police, thus justifying a more prolonged investigation while the officers thoroughly searched Mr. Howell's vehicle for a firearm.

The threat presented by the present situation was far more substantial and concrete than in *Rabin.* Moreover, Officer Smith had minimal and nonspecific information about the extent to which the handcuffs were causing distress and injury. Although the record is replete with evidence of Mr. Howell's earlier difficulties with his shoulder and of his difficulties after this encounter, we must focus on what Officer Smith knew at the time of the incident. During the arrest, and while placed in handcuffs, Mr. Howell at most told Officer Smith that he recently had surgery that limited the mobility of his arm; he never stated explicitly that he was in pain or actively suffering in any way.[18] *See Sow v. Fortville Police Dep't.*, 636 F.3d 293,

---

[18] R.22-1 at 27, 30. Mr. Howell's exact description of the relevant events has shifted over the course of the litigation. In his deposition, Mr. Howell stated that he told a Griffith officer that he was "sore." *Id.* at 30. In a post-deposition affidavit, however, Mr. Howell asserts for the first time that he told Officer Smith that he was in "pain." R.23-3 at 2. Although a "party may attempt to clarify or augment (but not contradict) prior deposition testimony through affidavits," *Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488, 492 (7th Cir. 2002), "[c]ourts generally ignore attempts to patch-up potentially damaging deposition testimony with a supplemental affidavit unless the party offers a suitable explanation—e.g., confusion, mistake or lapse in memory—for the discrepancy," *Maldonado v. U.S. Bank*, 186 F.3d 759, 769 (7th Cir. 1999). Additionally, this court "does not allow [a party] to contradict deposition testimony with later-filed contradictory affidavits" in order to create "'sham' issues of fact with affidavits that contradict their prior depositions." *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005).

Mr. Howell contends that his affidavit simply clarifies his deposition testimony, and thus may be considered, whereas Officer Smith submits that the two are in direct conflict, representing an improper effort to create a dispute of material fact that would preclude summary judgement. A review of both Mr. Howell's deposition and affidavit reveals a level of contradiction that requires that we disregard the latter for purposes of this motion.

> During his deposition, Mr. Howell testified as follows:
>
> Q: You told the officer, the Griffith officer, that your shoulder was sore?
>
> A: Yes.
>
> Q: Did you give any other description to the officer of any pain that you were feeling in your right shoulder?
>
> A: Just the fact that it was sore.
>
> Q: Did you say anything to any of the other officers about any pain in your shoulder other than that one comment that you made to the Griffith officer that your shoulder was sore?
>
> A: And the original officer that handcuffed me.
>
> Q: Well, you never told them that you were in pain. You told them that you had surgery and your arm is not supposed to be put behind your back; correct?
>
> A: Yes.
>
> Q: So you never told them that you were in pain at any time; is that correct?
>
> A: Yes.

R.22-1 at 30. Mr. Howell's affidavit, on the other hand, tells a different story. In particular, it states that "[o]n at least two occasions I was taken out of the vehicle and them [sic] placed back in the vehicle." R.23-3 at 1. "During that time I was in pain and informed the officers of said pain." *Id.*

303–04 (7th Cir. 2011) (dismissing claim where plaintiff complained once but presented no evidence that he elaborated on the pain to the defendant); *Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006) (dismissing excessive force claim where plaintiff complained the handcuffs were on too tight but did not indicate the degree of pain). We further note that Mr. Howell also concedes that Officer Smith was not overly forceful when placing him in handcuffs.

The crux of the matter is that, *from Officer Smith's perspective*, he was dealing with an individual suspected of committing a felony involving the discharge of a firearm on the public way. *See Smith*, 697 F.3d at 632 ("Similarly, it was entirely reasonable for Agent Stover to use handcuffs to securely detain Smith during the brief ten minutes when Agent Stover was left alone with Smith on a public street."). Although "[a] person has the right to be free from an officer's knowing use of handcuffs in a way that would inflict *unnecessary* pain or injury," that right is tempered by the attendant "risk of flight or threat of injury." *Rooni*, 742 F.3d at 742 (emphasis added). Here, although Officer Smith had a duty to *consider* the information that Mr. Howell had given him about his condition,

---

at 2. Although both the deposition and the affidavit reference multiple interactions with the police, in which some level of discomfort was expressed, the affidavit expressly states that he told the officers that he was in "pain" and the deposition expressly disclaims any such statement. As a result, the affidavit is in direct conflict with Mr. Howell's sworn deposition testimony, and any conflicting portions must be ignored for purposes of this appeal. Specifically, we must disregard any statement in which Mr. Howell claims to have notified the police of the fact he was in "pain" during his detention. Moreover, because his affidavit went beyond simply clarifying his deposition testimony, any conflict between the two does not create an issue of material fact that would preclude summary judgment.

*see Stainback*, 569 F.3d at 773, he had very little information to evaluate. That information, moreover, clearly did not out-weigh the very concrete information about the crime and the circumstances under which it was allegedly committed. Officer Smith's decision did not violate the Fourth Amendment.

### Conclusion

The district court erred in denying summary judgment for Officer Smith. We therefore reverse the judgment of the district court and remand the case for further proceedings consistent with this decision. Officer Smith may recover the costs of this appeal.

REVERSED AND REMANDED