In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-2409

ROLAND JOHNSON,

*Plaintiff-Appellant,*

*v.*

MANITOWOC COUNTY, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 1:09-cv-00248—**Rudolph T. Randa**, *Judge.*

ARGUED DECEMBER 3, 2010—DECIDED MARCH 10, 2011

Before FLAUM, ROVNER, and EVANS, *Circuit Judges*.

EVANS, *Circuit Judge.* A landlord is lucky when he rents a dwelling he owns to a tenant who turns out to be pretty good. When he rents to a tenant who turns out to be fairly bad, he's unlucky. And then there's a landlord like Roland Johnson who goes far beyond being merely unlucky. Johnson picked a doozy of a tenant—he rented to a fellow named Steven Avery. Mr. Avery, as most anyone who lives in Wisconsin knows, was the focus of intense media coverage beginning in 2003. It

was then, 18 years into serving a sentence on a 1986 Manitowoc (Wisconsin) County rape conviction, that Avery was released from prison after DNA testing pointed to another man as the perpetrator of the crime.

Johnson owns a trailer and a garage on a piece of land in rural Manitowoc County. The area also holds an auto salvage yard. Johnson rented the property to Avery sometime in 2003. On October 31, 2005, a photographer from Auto Trader magazine named Teresa Halbach met with Avery at the property. She was never seen again. An investigation into Halbach's disappearance led to murder charges (and a charge of mutilating a corpse) against Avery.[1] Avery denied the charges, arguing that he was framed by Manitowoc County authorities hellbent on retaliating against him for filing a $36 million dollar lawsuit against them stemming from his 1986 wrongful conviction. Despite this claim, a jury in Calumet County (the case was transferred there) convicted Avery in 2007 of murdering Halbach.[2] Avery was sentenced to life in prison without parole. His appeal of that conviction, we were told during oral argument in this case, is pending in the Wisconsin Court of Appeals.

Johnson's case against Manitowoc and Calumet Counties and several Calumet county officials[3] (we will refer to the defendants, collectively, as "Manitowoc") grows out

---

[1]  Avery's nephew, Brendan Dassey, was also charged.

[2]  Avery was acquitted on the corpse mutilation charge.

[3]  Sheriff Jerry Pagel, and Sheriff's Deputies William Tyson, Mark Wiegert, Wendy Baldwin, and John Dedering.

of the investigation into Ms. Halbach's disappearance and murder. During the investigation authorities executed several search warrants and seized several items belonging to Johnson. These items, held as evidence, have yet to be returned. The meat of the claim, however, involves damage to Johnson's property which included removing carpet sections and wall paneling, cutting up a couch in the trailer, and jackhammering the concrete floor of the garage.

Johnson brought claims pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth, Fifth, and Fourteenth Amendment rights. The district judge granted Manitowoc's motion for summary judgment on all of Johnson's claims and declined to exercise supplemental jurisdiction over his remaining state law claims. On appeal, Johnson argues (1) that his Fourth and Fourteenth Amendment rights were violated when officers used a jackhammer instead of a less destructive instrument to remove concrete from his garage, and (2) that he is entitled to compensation under the Takings Clause of the Fifth Amendment for damage caused to his property and items taken during the execution of the search warrants.

The investigation into Halbach's murder was led by the Calumet County Sheriff's Department.[4] The investigation focused on the trailer where Avery lived, along with the garage and the surrounding land and structures.

---

[4] Calumet County ran the investigation because of Avery's then—ongoing lawsuit against Manitowoc County.

Johnson was not present at any time during the searches; he does not claim that the search warrants were invalid; and he is not disputing that the warrants were based on probable cause. At all relevant times, Jerry Pagel was the Sheriff of Calumet County and Sheriff's Deputies William Tyson, Mark Wiegert, Wendy Baldwin and John Dedering executed the search warrants on Johnson's property.

Every item seized by the officers relates to a specific search warrant. A March 1, 2006, warrant commanded the officers to search for and return knives, bullet fragments, human blood and other genetic material, cleaning supplies, bedding, mattresses, "or any other items upon which blood may have sprayed, dripped or otherwise adhered to including but not limited to, the concrete floor." Other search warrants were more expansive, ranging from instruments "capable of taking human life" to objects used to "wrap or encase a body" or hide a body, to "[a]ny other items which officers identify as being related to the investigation of the disappearance or homicide of Teresa M. Halbach."

Acting under the warrants, the officers identified several areas of the garage where blood may have seeped through the cracks in the concrete floor. In order to reach these areas, the officers jackhammered a portion of the floor approximately eight feet long by two feet wide. The overall amount of concrete removed from the garage was relatively small, but the damage was extensive enough that the entire floor had to be replaced. Johnson argues that the officers could have

used a carbide or diamond saw to cut smaller areas, causing less damage.

The officers also damaged the inside of the trailer during the search. The main door was damaged. The officers also removed two or three sections of paneling from the bedroom, about half of the hallway and bedroom carpeting, and small swatches from the couch. They removed, but did not seize, personal items in the garage in order to inspect the floor.

Johnson argues that the combination of damage to the trailer and garage, missing items of personal property, and his financial inability to afford repairs makes the trailer unusable, except when he decides to "rough it"—then the trailer is usable for a night at a time. Johnson concedes that he can still use the property for recreational activities like hiking or walking, or for storage.

All of the items collected from the search are in possession of the Manitowoc County Clerk of the Courts if they were produced as evidence in the trial, and the remaining items are in possession of the Calumet County Sheriff's Department. In Wisconsin, seized items may be returned upon authorization of the District Attorney when they are no longer needed as evidence. Because Avery's appeal is still pending, the District Attorney has not yet released the property. Johnson does not seriously dispute that the items might be needed while the case against Avery is still alive.

In the fall of 2007, Johnson called the Calumet County Sheriff's Department in order to find out who was responsible for the damage to his property and how he

could get his seized property back. He also approached Officer Wiegert and requested a list of items taken from his property. But Johnson has not officially requested that his items be returned.

Johnson then filed this suit against Manitowoc alleging that the taking of his property, and damage to his trailer, violated his constitutional rights. Johnson also included state law causes of action, including a negligence claim and a takings claim under Article 1, Section 13 of the Wisconsin Constitution.

The district judge granted Manitowoc's motion for summary judgment, finding that the use of the jack-hammer was reasonable under the circumstances in compliance with the Fourth Amendment, that Johnson did not have a valid takings claim under the Fifth Amendment because the officers were acting pursuant to their police power, and that Johnson failed to state a viable Fourteenth Amendment claim because the officers' conduct was reasonable under the circumstances. The judge also found that Johnson failed to state a claim for municipal liability against either Calumet or Manitowoc County. Finally, after granting Manitowoc's motion in regard to the federal claims, the judge declined to exercise supplemental jurisdiction over Johnson's state law claims.

We review the judge's grant of summary judgment *de novo*. *Green v. Butler*, 420 F.3d 689, 694 (7th Cir. 2005). Summary judgment is appropriate where the evidence shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c)(2). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008) (internal quotation marks omitted).

We begin with Johnson's claim that his Fourth Amendment rights were violated when the officers used a jackhammer in their effort to collect evidence in accordance with the search warrant. The Fourth Amendment guarantees that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." "The touchstone of Fourth Amendment inquiry is reasonableness, a standard measured in light of the totality of the circumstances and determined by balancing the degree to which a challenged action intrudes on an individual's privacy and the degree to which the action promotes a legitimate government interest." *Green*, 420 F.3d at 694 (internal citations omitted). The reasonableness requirement extends to the manner in which the search is conducted. *Id*. at 694-95. It is "generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant." *Dalia v. United States*, 441 U.S. 238, 257 (1979). The test is whether "the officers executing the warrant employ[ed] a methodology that is, in light of the values protected by the Fourth Amendment and the exigencies of the situation, a reasonable one." *United States v. Jones*, 54 F.3d 1285, 1292 (7th Cir. 1995).

Johnson argues that the officers' use of the jack-hammer violates the reasonableness standard of the Fourth Amendment. He contends that the officers should have used a diamond or carbide-bladed saw, which would have resulted in less damage to the garage floor. Perhaps Johnson is correct, but the use of the jackhammer looks to be reasonable under the circumstances. Reasonableness, of course, is judged from the perspective of the officer at the time of the search, not with the benefit of 20/20 hindsight. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Although another device, here a diamond or carbide saw, might well have done the job a little cleaner, use of the jackhammer under the circumstances was not unreasonable. Johnson cites, and we find, no cases requiring that officers use the least possible destructive means to execute a search warrant. Rather, "so long as the officer's conduct remains within the boundaries of reasonableness, an officer has discretion over the details of how best to proceed with a search warrant's execution." *Lawmaster v. Ward*, 125 F.3d 1341, 1349 (10th Cir. 1997).

Johnson points to the Tenth Circuit's decision in *Lawmaster* where the court found that the officers' actions—leaving the plaintiff's gun in the dog's water bowl and leaving cigar and cigarette ashes in his bedding—were not "reasonably necessary to carry out the warrant's purpose to search for and seize a machine gun and parts." *Id.* at 1349-50. The Tenth Circuit held that the officers' actions were not reasonable as they had nothing to do with the search for a machine gun. Here, however, the use of the jackhammer was a

reasonable effort to gather blood samples from the concrete floor. Moreover, the court in *Lawmaster* held that officers did not violate the Fourth Amendment when they broke the locks on a gun vault, "because the Agents had to examine the contents of the gun vault" and thus "such conduct was reasonably necessary to carry out the purposes of the warrant." *Id.* at 1350 n.3. With that, *Lawmaster* actually gives more support to the defendants here than it does to Johnson.

Johnson also tries, rather unconvincingly, to distinguish *United States v. Becker*, 929 F.2d 442 (9th Cir. 1991), a case where the Ninth Circuit held that the use of a jackhammer to remove portions of a concrete slab during a search was reasonable. The court noted that the agents "had ample reason to believe that the concrete slab was being utilized to hide the very evidence they were legally on the premises to find. The only way to obtain this evidence was to use a jackhammer to break up the concrete." *Id.* at 447. Although *Becker* did not address whether there was a less destructive method than using a jackhammer to dig up the concrete floor, we don't think that sort of discussion was necessary. The question here, as in *Becker*, is reasonableness under the circumstances. We think it was reasonable and that Johnson's Fourth Amendment rights were not violated. And because challenges to the "reasonableness of a search by government agents clearly fall under the Fourth Amendment, and not the Fourteenth," *Conn v. Gabbert*, 526 U.S. 286, 293 (1999), Johnson's claim under that amendment fails as well.

We turn now to Johnson's claim that he is entitled to compensation under the Takings Clause of the Fifth Amendment. The claim, unfortunately for Johnson, fares no better than did his claims under Amendments Four and Fourteen.

The Takings Clause provides, "nor shall private property be taken for public use, without just compensation." It is made applicable to the States by the Fourteenth Amendment. *Kelo v. City of New London, Conn.*, 545 U.S. 469, 472 n.1 (2005). But the Takings Clause does not apply when property is retained or damaged as the result of the government's exercise of its authority pursuant to some power other than the power of eminent domain. *See AmeriSource Corp. v. United States*, 525 F.3d 1149, 1154 (citing *Bennis v. Michigan*, 516 U.S. 442, 452 (1996)). Here, the actions were taken under the state's police power. The Takings Clause claim is a non-starter.

So we conclude that summary judgment was properly granted to Manitowoc on all of Johnson's claims. But having said that, we add that it seems quite unfair to make an innocent, unlucky landlord absorb the costs associated with the execution of a search warrant directed at a criminally-inclined tenant. But we note that Johnson is not without redress. Wisconsin has procedures that Johnson can turn to for both the return of his property and the damage to his garage floor and trailer. He should use those procedures to seek redress. Johnson simply does not have grounds to make a federal constitutional claim under the Fourth or Fourteenth Amendment or the Takings Clause of the Fifth Amendment.

For the foregoing reasons, the judgment of the district court is AFFIRMED.