**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-2894

_____

MARC ZITTER,
                              Appellant

v.

CHRISTOPHER PETRUCCELLI; BRIAN TOMLIN;
JASON SNELLBAKER; TYLER HAUSAMANN;
RYAN HARP; BRETT NICKLOW; MARK CHICKETANO;
DOMINICK FRESCO; DAVID CHANDA;
ROBERT THOMAS MARTIN; CALLIOPE ALEXANDER;
DANIELLE BYTHEWAY; WILLIAM FAZIO;
JOHN/JANE DOE(S) INDIVIDUALS 1-10;
ABC GOVERNMENTAL AGENCIES 1-10

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. No. 1-15-cv-06488)
District Judge: Hon. Noel L. Hillman

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 25, 2018

_____

Before: MCKEE, SHWARTZ, and NYGAARD, Circuit Judges.

(Opinion Filed: July 31, 2018)

_____

OPINION[*]

_____

SHWARTZ, <u>Circuit Judge</u>.

Plaintiff Marc Zitter ran an oyster-farming business and claims that state officials seized property and prosecuted him in violation of his constitutional rights. The District Court granted Defendants'[1] motion to dismiss his complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the District Court properly dismissed Zitter's complaint, we will affirm.

I

A

We begin with an overview of New Jersey's statutory framework for oyster farming and condemnation of oysters raised in prohibited waters.

The New Jersey Department of Environmental Protection (the "DEP") identifies bodies of water suitable and unsuitable for harvesting shellfish, in accordance with the National Shellfish Sanitation Program's Guide for the Control of Molluscan Shellfish (the "Model Ordinance"). N.J. Admin. Code § 7:12-1.3; <u>see also</u> App. 186-663 (2011

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Defendants are Christopher Petruccelli, Brian Tomlin, Jason Snellbaker, Tyler Hausamann, Ryan Harp, Brett Nicklow, Mark Chicketano, Dominick Fresco, and David Chanda, who are Conservation officials at the New Jersey Department of Environmental Protection (the "DEP"), Division of Fish and Wildlife ("F&W"); DEP Commissioner Robert Thomas Martin; and Danielle Bytheway, Calliope Alexander, and William Fazio, who are officials at the New Jersey Department of Health (the "DOH").

2

Model Ordinance). The DEP classifies waters as "Approved, Conditionally Approved, Restricted, Conditionally Restricted, or Prohibited." N.J. Admin. Code § 7:12-1.3(a). Everything but "approved" waters are deemed "condemned," id. § 7:12-1.2, and oysters raised in "condemned" waters without a DEP permit may not be harvested, distributed, or sold, N.J. Stat. Ann. § 58:24-3; N.J. Admin. Code. § 8:13-1.3(a). A person who harvests, distributes, or sells such oysters is guilty of a petty disorderly persons offense; and a person convicted of a subsequent offense is guilty of a disorderly persons offense. N.J. Stat. Ann. § 58:24-9.

B[2]

Zitter started Cape May Oyster Company in 2012. He purchased 300,000 "seed" oysters from a Rutgers University shellfish lab and placed the oysters at Atlantic Capes Fisheries's ("ACF") site at Cape Shore, New Jersey. App. 117. The waters from which the seed oysters came, as well as ACF's site, were "prohibited" waters.

In April 2013, Zitter moved his oyster seed from ACF's farm to two of his own oyster aquacultural farms. One site was in Dias Creek in Cape May County, and the other was a leased location along a shoreline outside Dias Creek (the "Leased Waters"). Zitter initially believed both sites were "approved" waters, but he learned in May 2013 that Dias Creek in fact was designated as "prohibited." See N.J. Admin. Code § 7:12-

---

[2] Because this case comes before us on a Rule 12(b)(6) motion to dismiss Zitter's Second Amended Complaint, we draw the factual background from the allegations contained in it, which we accept as true, see Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 166 (3d Cir. 2016), and attached exhibits, see Hartig Drug Co. v. Senju Pharm. Co., 836 F.3d 261, 268 (3d Cir. 2016).

3

2.1(a)(19)(iii) (stating that "[a]ll of Dias Creek" is prohibited). Because the Model Ordinance permits the marketing and sale of oysters that originate in prohibited waters but are "purified" in accordance with the ordinance, Zitter moved his oysters, between late May 2013 and late June 2013, from Dias Creek to the Leased Waters. App. 119-20. Zitter never obtained a permit to take his oysters from prohibited to approved waters.

Zitter's oysters grew to approximately 640,000 by September 2013. About 400,000 of the oysters originated in the Leased Waters, and Zitter sold some of these oysters to local markets and restaurants.

In September, the DEP began paying closer attention to Zitter's operations.[3] On September 17, 2013, Conservation Officers from the DEP's Division of Fish & Wildlife ("F&W") began surveilling Zitter's oyster operations in Dias Creek and at the Leased Waters. Among other things, they observed Zitter taking oysters out of Dias Creek and spraying them with water. On September 27, 2013, Defendant Christopher Petruccelli— a DEP Conservation Officer—issued Zitter a summons, charging him with harvesting oysters in violation of N.J. Stat. Ann. § 58:24-3 and N.J. Admin. Code § 7:12-2.1(a)(19)(iii). The same day, Petruccelli "shut down [Zitter's] oyster-farming operation" and confiscated Zitter's harvester's tags and dealer's logs. App. 135.

The next day, F&W officers, including Petruccelli, entered three restaurants that had bought oysters from Zitter and seized dealer's tags belonging to Zitter. The

---

[3] Zitter alleges this occurred because he was scheduled to be a witness in a separate case involving defendant Petruccelli and sea bass fisherman. Those fishermen entered a guilty plea, and Zitter never testified.

4

following morning, Zitter met with Petruccelli and defendant F&W Conservation Officer Brian Tomlin to explain that the oysters that originated in Dias Creek had never been marketed or sold, and those oysters were still in the six-month purification process, as set forth in the Model Ordinance. Petruccelli advised Zitter that he had spoken to his superiors and directed Zitter not to harvest his oysters, and warned him that he would face criminal charges if he did so. Thereafter, Petruccelli and Department of Health (the "DOH") inspector Defendant Danielle Bytheway entered Zitter's processing facility at another local restaurant. They found several violations based on, among other things, inadequate record-keeping, storage, and monitoring, possible commingling of Dias Creek and Leased Waters oysters, and a lack of harvest tags.

The following week, Petruccelli appeared before a New Jersey Superior Court Judge and obtained search warrants. Thereafter, government officials seized Zitter's oysters and other oyster-farming property, including shellfish, boats, boating equipment, documents, and items used for aquaculture activities. The oysters were discarded.

Petruccelli issued two municipal court summonses to Zitter, charging him with violations of § 58:24-1 et seq. The DEP later withdrew the charges.

C

Zitter filed suit against Defendants in the United States District Court for the District of New Jersey, alleging violations of 42 U.S.C. § 1983 and New Jersey state law. Under § 1983, he asserted violations of the Fourth, Fifth, and Fourteenth Amendments

5

and claimed malicious prosecution.[4]  He also alleged supervisory liability on the part of Defendants Martin and Fresco.

The District Court granted Defendants' Rule 12(b)(6) motion to dismiss.  Zitter v. Petruccelli, Civ. No. 15-6488, 2017 WL 3393805, at *5-12 (D.N.J. Aug. 7, 2017).  It concluded (1) Zitter's Fourth Amendment claim failed because he did not sufficiently allege Defendants lacked probable cause to seize his property and because he had no valid possessory interest in the oysters; (2) there was no Fourteenth Amendment procedural due process violation because he had sufficient post-deprivation remedies; (3) Zitter had no Fifth Amendment Takings Clause claim because he had no property interest in the destroyed oysters; (4) his selective-enforcement and "class of one" Equal Protection claims failed because he did not allege facts showing he was treated differently from similarly situated oyster farmers; and (5) his malicious prosecution claim failed because he did not show Defendants lacked probable cause to believe he violated state law.  Id. at *5-11.  The Court also held Defendants were entitled to qualified immunity as to Zitter's federal constitutional claims, id. at *7-8, and dismissed his claims against Martin and Fresco because he did not demonstrate any underlying constitutional violation and his allegations against them were conclusory and legally insufficient.  Id. at *11-12.

Zitter appeals.

---

[4] Zitter withdrew his retaliation and substantive due process claims, see infra n.5, and has not challenged the District Court's ruling declining to exercise supplemental jurisdiction over his state law claims, Zitter, 2017 WL 3393805, at *12.

II[5]

A

We exercise plenary review of a district court's order granting a motion to dismiss. Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220 (3d Cir. 2011). We must determine whether the complaint, construed "in the light most favorable to the plaintiff," Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co., 768 F.3d 284, 290 (3d Cir. 2014) (citation omitted), "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)), "but we disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements," James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012). A claim "has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014) (internal quotation mark omitted).

As explained below, the District Court appropriately dismissed Zitter's complaint.

---

[5] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367(a). Defendants assert we lack jurisdiction because the District Court's order was not final as it dismissed Zitter's substantive due process and retaliation claims without prejudice. However, Zitter withdrew these claims pursuant to Rule 41(a)(1) and has explicitly stated that he has withdrawn both of the claims with prejudice and stands on remaining claims in the Second Amended Complaint. As a result, the District Court's order is final, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

B

1

The District Court correctly concluded that Zitter's Fourth Amendment claim fails because he did not sufficiently plead that Defendants lacked probable cause to search his operations and seize his property. A seizure is "per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." Brown v. Muhlenberg Twp., 269 F.3d 205, 210 (3d Cir. 2001) (quoting United States v. Place, 462 U.S. 696, 701 (1983)). Here, the searches and seizures of Zitter's property were done pursuant to judicial warrants. Moreover, Zitter has not pleaded that the officers who obtained the warrants lacked probable cause to believe that he violated § 58:24-3 or that the places searched would not have evidence of this offense. The Second Amended Complaint plainly states that certain Defendants observed Zitter move oysters from the prohibited waters in Dias Creek to the Leased Waters and that he had no permit to do so. In addition, Zitter admitted to Petruccelli that he removed oysters from Dias Creek for purposes other than testing and parasite removal.[6] Defendants had probable cause to seize the items listed in the warrants, and Zitter thus fails to state a Fourth Amendment violation.

---

[6] Zitter argues that his conduct was consistent with the Model Ordinance, but that ordinance alone does not govern his conduct. First, the portion of the Model Ordinance Zitter invokes does not appear to have been adopted at the time of the events at issue here. Second, the Model Ordinance does not alter § 58:24-3's bar on harvesting oysters from prohibited waters.

The District Court also correctly concluded that Zitter's procedural due process claim fails. The Due Process Clause of the Fourteenth Amendment provides that "no State [shall] deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV § 1. "[A] cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie." Mudric v. Att'y Gen., 469 F.3d 94, 98 (3d Cir. 2006) (citing Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569 (1972)). Zitter had no cognizable property interest in the seized oysters. He possessed the oysters in violation of § 58:24-3, and as a result, he "never properly obtained an actionable property interest in the [oysters] harvested," Rizzo v. Connell, Civ. No. 10-4136, 2012 WL 32206, at *7 (D.N.J. Jan. 5, 2012) (holding that plaintiff had no valid property interest in clams harvested in violation of § 58:24-3).

As to the other property the state officials seized, Zitter has constitutionally sufficient processes to challenge the seizures. While due process usually requires some type of pre-deprivation hearing, a post-deprivation hearing may also satisfy due process. Zinermon v. Burch, 494 U.S. 113, 127-28 (1990). There was no pre-deprivation hearing here, but New Jersey law provides "remedies for erroneous deprivations" of property, id. at 126. In criminal cases, a party may file a motion for the return of seized property. N.J. Ct. R. 3:5-7. A party may also file a civil action for a writ of replevin. N.J. Ct. R. 4:61-1; see State v. One 1986 Subaru, 576 A.2d 859, 863 (N.J. 1990) (citing Rules 3:5-7 and 4:61-1 and stating "if the seizure itself was improper, the seized property can be retrieved under the Rules of Criminal Procedure," and "[c]laimants can file replevin actions to seek

the return of seized property"). Moreover, the New Jersey Torts Claims Act, N.J. Stat. Ann. § 59:1-1 et seq., "provides [Zitter] an adequate postdeprivation remedy to seek money damages for the seizure of his property," Higgins v. Beyer, 293 F.3d 683, 694 (3d Cir. 2002). Indeed, Zitter invoked that process and filed initial claims for damages against the State of New Jersey for the seizure of his oysters and other property. App. 726-36, 744-52. Because Zitter has not shown that these post-deprivation procedures are inadequate, his procedural due process claim fails. See Revell v. Port Auth. of N.Y. & N.J., 598 F.3d 128, 139 (3d Cir. 2010) (holding that plaintiff's due process claim failed because New Jersey's "post-deprivation procedures, including state tort remedies, are adequate").

3

Zitter's Takings Clause claim also fails. The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. "The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." Lingle v. Chevron U.S.A., Inc., 544 U.S. 528, 537 (2005). However, Zitter lacks a viable Takings claim because Defendants acquired the property pursuant to a lawful search warrant. See Bennis v. Michigan, 516 U.S. 442, 452 (1996) ("The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."); Johnson v. Manitowoc County, 635 F.3d 331, 333-36 (7th Cir. 2011) (affirming summary judgment on Takings claim because property was taken

10

pursuant to search warrants, "under the state's police power"). Therefore, the District Court properly dismissed Zitter's Takings claim.

4

Zitter also argues the District Court erred in dismissing his Equal Protection claims. He asserts he was treated differently from other similarly-situated oyster farmers based on theories of (1) selective enforcement and (2) a "class of one." Zitter alleges ACF and Richard Cash are comparators and were treated more favorably. He asserts that Cash raised 100,000 oysters "a few hundred feet away in Dias Creek," App. 150, and had a farm in approved waters outside Dias Creek, near the Leased Waters; Cash moved oysters from Dias Creek to his approved site around the same time Zitter moved his oysters; Cash marketed oysters that were once in Dias Creek; the DEP was aware of Cash's operations, but Cash was not prosecuted and, in fact, he received permission from F&W to transfer oysters from Dias Creek to approved waters. As to ACF, Zitter asserts that the DEP was aware that ACF "had hundreds of thousands of oysters growing in prohibited waters" that were moved to approved waters for purification, App. 152, but ACF was never prosecuted, and none of its oysters or equipment were seized.

To establish a selective enforcement claim, a plaintiff must show, among other things, that other similarly-situated persons were treated differently. Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005). "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" Startzell v. City of Philadelphia, Pennsylvania, 533 F.3d 183, 203 (3d Cir. 2008) (quoting Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)). Zitter's selective-enforcement claim fails because he has

11

not shown any comparator was treated differently. For instance, unlike Zitter, Cash kept oysters in approved waters for at least six months after moving them—for purification— whereas Zitter started selling oysters less than six months after he moved them. Furthermore, there is no allegation that Cash violated the storage, monitoring, and tagging rules. As to ACF, Zitter does not allege ACF itself harvested oysters raised in prohibited waters. He also does not allege how long ACF's oysters were purified in approved waters or that ACF had any storage, monitoring, or tagging violations. Thus, neither Cash nor ACF are similarly situated to Zitter.

Zitter's "class of one" claim fails for the same reason. An Equal Protection claim brought by a "class of one" requires the plaintiff to sufficiently allege he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam). Because Zitter did not allege any similarly-situated person was treated differently, the District Court properly dismissed this claim.

5

The District Court also correctly dismissed Zitter's malicious prosecution claim. To state a § 1983 malicious prosecution claim based on the Fourth Amendment, a plaintiff must establish:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

12

Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007). Zitter's malicious prosecution claim was properly dismissed because, as discussed above, he failed to adequately plead a lack of probable cause.[7]

## III

For the foregoing reasons, we will affirm.

---

[7] Because Zitter has not sufficiently alleged any constitutional violation, both his supervisory liability claim and his opposition to Defendants' assertion of qualified immunity fail. See, e.g., Saucier v. Katz, 533 U.S. 194, 201 (2001) (to overcome the defense of qualified immunity, a plaintiff must plead facts showing a violation of a clearly established constitutional or statutory right); A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Detention Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (to recover based on a supervisory liability theory, a plaintiff must show an underlying constitutional violation).