In the

# United States Court of Appeals
## For the Seventh Circuit

No. 24-2448

AMY HADLEY,

*Plaintiff-Appellant,*

*v.*

CITY OF SOUTH BEND, INDIANA, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:24-cv-00029 — **Damon R. Leichty,** *Judge.*

ARGUED FEBRUARY 26, 2025 — DECIDED OCTOBER 7, 2025

Before ROVNER, SCUDDER, and KOLAR, *Circuit Judges.*

KOLAR, *Circuit Judge.* Amy Hadley's home was badly damaged when local law enforcement executed a search warrant looking for a fugitive they incorrectly believed was inside her home. When both the City of South Bend and St. Joseph County declined to pay for the $16,000 in resulting damages, Hadley sued for compensation under the Takings Clause of the Fifth Amendment to the U.S. Constitution. The district court dismissed her complaint, concluding that she failed to

state a claim, a decision she now appeals. Because Hadley's arguments for compensation run contrary to our precedent, we affirm.

## I. Background

The district court dismissed this case at the pleadings stage, so we accept the following well-pled allegations as true on appeal. *Emerson v. Dart*, 109 F.4th 936, 941 (7th Cir. 2024).

Amy Hadley lives in South Bend, Indiana with her two children. In June 2022, local law enforcement believed a murder suspect, John Parnell Thomas, had (based on his IP address) accessed his Facebook account from within Hadley's home. Officers spent the evening surveilling Hadley's house from afar but saw no sign of Thomas. The following day, however, someone again accessed the same Facebook account from the same IP address. Based on this information, officers obtained a lawful warrant to search Hadley's home for Thomas.

Warrant in hand, more law enforcement gathered outside the home to execute it. Before entering, they demanded Thomas exit, shouting their commands from outside using a bullhorn. Hadley's fifteen-year-old son—the only person in the home—surrendered. Hadley arrived at the scene before officers entered her home. She professed to have no connection with, or knowledge of, Thomas.

Officers were undeterred. Believing Thomas was in the home and refusing to leave, they entered the house forcefully. They broke windows and launched thirty cannisters of tear gas into the home. The gas destroyed all "porous" items in the house, like clothing and beds (Hadley had to sleep in her car

for days until toxic fumes from the gas dissipated). Police also wrecked internal security cameras, punched holes in the walls, ransacked furniture and a closet, and tore down a panel on a wall and a fan in a bathroom.

After the government refused to compensate Hadley for her damages, she sued defendants under 42 U.S.C. §1983 for $16,000. Relevant here, she argued the state officials violated her Fifth and Fourteenth Amendment rights by taking her property (destroying it) "for public use" (while searching for a fugitive) and thus owed her "just compensation." *See* U.S. CONST. amends. V, XIV. Hadley did not challenge the warrant police obtained to search her home, nor did she assert that police executed the warrant "unreasonabl[y]" in violation of the Fourth Amendment. *Id.* amend. IV.

Though Hadley filed suit in Indiana state court, St. Joseph County removed the action to the federal district court in South Bend. After removal, defendants City of South Bend, the South Bend Police Department, St. Joseph County, the St. Joseph Police Department, and the St. Joseph Board of Commissioners moved to dismiss. They principally argued that *Johnson v. Manitowoc County*, 635 F.3d 331 (7th Cir. 2011), forecloses Hadley's claim. The district court agreed and dismissed her complaint. Hadley appealed.

## II. Analysis

Hadley sues via 42 U.S.C. §1983, a procedural vehicle for a plaintiff to seek damages from state officials who violate her constitutional rights. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). To state a claim under §1983, Hadley must show (among other things) that she was "deprived of a right

secured by the Constitution or federal law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006).

Hadley asserts her Fifth Amendment right to just compensation under the Takings Clause, applicable to the states through the Due Process Clause of the Fourteenth Amendment. The Takings Clause provides: "nor shall private property be taken for public use, without just compensation." U.S. CONST. amend. V. Whether Hadley's §1983 claim survives dismissal turns on whether the Fifth Amendment does in fact entitle her to compensation for the property damage police caused while executing a valid warrant.

The district court, relying on *Johnson*, concluded the Fifth Amendment does not entitle her to compensation and dismissed the complaint. Hadley appeals, urging us to overrule *Johnson* and hold that: "innocent homeowner[s] with no connection to the sought-after suspect[,] whose property the [government] intentionally and severely damage[s] through a military-style assault … to execute a warrant to apprehend [a] suspect … when the property otherwise would not have been damaged" deserve compensation under the Fifth Amendment. Defendants, for their part, urge the opposite. They ask us to preserve and apply *Johnson* here to reject Hadley's claim.

Because we agree that *Johnson* controls, we affirm. Under *Johnson*, the Fifth Amendment does not require the state to compensate for property damage resulting from police executing a lawful search warrant. That is precisely what happened here: the damage Hadley suffered happened because police executed a lawful search warrant in her home. Hadley cannot escape *Johnson*'s application in this case by arguing there is some other set of facts that should compel us to revisit *Johnson*. We may face difficult questions regarding the

application of the Takings Clause in future cases. That does nothing to change the fact that *Johnson's* application to damage caused when local officials execute a valid search warrant is both clear and controlling. Thus, we affirm the district court's order dismissing Hadley's complaint.

We proceed in three steps. First, we explain that *Johnson* controls and requires us to affirm. Second, we explain Hadley's contrary arguments and conclude that they do not cast doubt that *Johnson* controls here. Third, we briefly explain that—even setting *Johnson* aside—we have serious doubts about Hadley's proposed holding.

### A. *Johnson*, which addressed facts nearly identical to Hadley's, controls and requires us to affirm.

This Court decided *Johnson* in 2011. There, the plaintiff (Johnson), like Hadley, suffered significant property damage while police executed a valid warrant.

Johnson owned a trailer and garage on a rural lot in Wisconsin. *Johnson*, 635 F.3d at 332. He rented the property to an individual suspected of murder. *Id.* The police obtained a warrant and searched the trailer for evidence. *Id.* at 333. While executing the warrant, police inflicted extensive damage. *Id.* at 333–34. In the trailer, they damaged the main door, removed wall panels in the bedroom, ripped up carpet in the hallway and bedroom, and cut swatches from a couch. *Id.* In the garage, police searched for blood that might have seeped into cracks in the concrete floor by jackhammering an eight-by-two-foot section of it. *Id.* at 333.

Johnson sued for damages, bringing two claims. First, though he did not challenge the warrant's lawfulness, he argued police acted unreasonably when executing the warrant

in violation of the Fourth Amendment. *Id.* at 334–36. Johnson also brought a claim under the Fifth Amendment, urging that police owed him just compensation for the property they destroyed while executing the search warrant. *Id.* at 336.

We rejected both claims, devoting the lion's share of our analysis to Johnson's Fourth Amendment claim. *Id.* at 334–36. After finding no Fourth Amendment violation, we turned to Johnson's Fifth Amendment theory. We observed that the police's "actions were taken under the state's police power," rather than the power of eminent domain. *Id.* at 336. For that reason, "[t]he Takings Clause claim [wa]s a non-starter" because "the Takings Clause does not apply when property is retained or damaged as the result of the government's exercise of its authority pursuant to some power other than the power of eminent domain." *Id.*

It is no surprise that with factual parallels so striking, *Johnson*'s holding bars Hadley's claim. Hadley, like Johnson, suffered extensive personal property damage at the hands of police executing a lawful search warrant. Hadley, like Johnson, does not argue the warrant police secured was invalid or defective. Rather, Hadley, like Johnson, seeks compensation from police under the Fifth Amendment for the damage she suffered. *Johnson*'s application to such  facts is plain: the Fifth Amendment does not require a state to compensate a plaintiff for damages sustained while police execute a lawful search warrant. *Id.*

Recognizing that *Johnson* speaks to her claim directly, Hadley attempts to cast doubt on *Johnson*'s application beyond the facts before us. She takes issue principally with *Johnson*'s suggestion that takings under eminent domain are compensable, whereas takings under the police power are not. *Id.*

She says this is incompatible with Supreme Court precedent and so urges us to overrule *Johnson*.

### B. Hadley presents no grounds to overturn *Johnson*.

If this case presented a claim outside the context of police executing a lawful search warrant, we might need to grapple with more of Hadley's arguments. But it does not. *Johnson* settled the issue here: whether the Takings Clause applies when police damage property while executing a lawful search warrant. *Johnson* forecloses a takings claim under these circumstances, and Hadley gives us no reason to set that holding aside.

We could end with this straightforward analysis showing *Johnson* controls. Yet Hadley makes some sound observations about our takings analysis in *Johnson*—abbreviated as it was, because Johnson's primary claim arose under the Fourth Amendment—and highlights some issues we may need to grapple with in future cases. Understanding Hadley's argument requires some background. The "police power" refers to a state's general authority "to determine, primarily, what measures are appropriate or needful for the protection of the public morals, the public health, or the public safety." *Mugler v. Kansas*, 123 U.S. 623, 661 (1887). Historically, "eminent domain" referred to a state's power to physically take property by formally condemning it. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 148 (2021). The prototypical Takings Clause claim arises when a state physically takes land for public use by, for example, condemning a warehouse and using it for military purposes. *United States v. Gen. Motors Corp.*, 323 U.S. 373, 375 (1945).

Though the Supreme Court has at times suggested that the Takings Clause is limited to this more prototypical context, *e.g.*, *Bennis v. Michigan*, 516 U.S. 442, 452 (1996); *United States v. Dow*, 357 U.S. 17, 21 (1958); *United States v. Carmack*, 329 U.S. 230, 236–37 (1946), the Court has also rejected rigid distinctions between "eminent domain" and "police power" actions, *e.g.*, *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1023–25 (1992); *Penn. Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 123–28 (1978); *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). More recently, the Court observed that, given "the nearly infinite variety of ways in which government actions or regulations can affect property interests," there is "no magic formula" and "few invariable rules" in deciding "whether a given government interference with property is a taking." *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 31 (2012).

Thus, whether through eminent domain or other measures, a taking can occur through "two distinct classes" of government action: (1) permanent deprivations or destructions of physical property or (2) actions that regulate how a person can use their property, but do not appropriate, physically control, or destroy it. *Yee v. City of Escondido*, 503 U.S. 519, 522–23 (1992). The first is called a "*per se*" taking; the second is called a "regulatory taking." *Cedar Point Nursery*, 594 U.S. at 149. A regulatory taking may occur when the state exercises its police power to regulate how one uses property. *Id.* That said, "[w]henever a regulation results in a physical appropriation of property, a *per se* taking has occurred." *Id.*

One way a government exercises its police power is when it investigates criminal activity. *See id.* at 160–61. But the Court has held the Fifth Amendment does not apply when a

government takes property by asserting a "pre-existing limitation upon the landowner's title." *Lucas*, 505 U.S. at 1028–29. These limitations include "traditional common law privileges" like the "privilege to enter property to effect an arrest or enforce the criminal law under certain circumstances." *Cedar Point*, 594 U.S. at 160–61. As such, "government searches that are consistent with the Fourth Amendment and state law cannot be said to take any property right from landowners." *Id.* at 161.

For example, in *Bennis*, the Court held that lawfully seizing a vehicle through civil forfeiture after a criminal investigation is not a taking under the Fifth Amendment. *Bennis*, 516 U.S. at 452–53. There, the state seized a car after one of the car's owners, the husband, "engaged in sexual activity with a prostitute" inside the car. *Id.* at 443. The Court declined to award compensation to the other owner (the wife) for the auto's seizure because the state lawfully seized the car as an instrumentality of a crime. *Id.* at 452–53. No taking occurred, the Court reasoned, because the state "already lawfully acquired [the car] under the exercise of governmental authority other than the power of eminent domain." *Id.* at 452.

Several of our sister circuits have recently considered whether a taking occurs when a state damages property while exercising its law-enforcement powers. *E.g.*, *Baker v. City of McKinney*, 84 F.4th 378 (5th Cir. 2023) (analyzing whether a taking occurred when police damaged a plaintiff's home during a standoff with an armed fugitive), *cert. denied*, 145 S. Ct. 11 (mem.) (2024); *Slaybaugh v. Rutherford County*, 114 F.4th 593 (6th Cir. 2024) (analyzing whether a taking occurred when police damaged a plaintiff's home while arresting a murder suspect), *cert. denied*, 145 S. Ct. 1959 (2025). A decision from the

Ninth Circuit is also forthcoming. *Pena v. City of Los Angeles*, No. 24-2422 (9th Cir. 2025), *oral argument heard* (Jan. 16, 2025) (raising whether a business owner may bring a takings claim for damage to his shop caused when police sought to apprehend a fugitive). But so far, no circuit to consider this issue has awarded a plaintiff compensation. Nonetheless, two present Justices recently expressed interest in this issue. In their words, whether a taking occurs when law enforcement damages property remains an "open question … that would benefit from further percolation" in the courts of appeals. *Baker*, 145 S. Ct. at 13 (Sotomayor, J., statement respecting denial of certiorari, joined by Gorsuch, J.).

With this controversy in hand, Hadley prods us to enter this debate anew. She urges us to abandon *Johnson* because it suggested the Takings Clause categorically does not apply when a government exercises its police powers. She says this distinction does not match recent Supreme Court precedent, which recognizes that a state may impose a taking when it exercises its police power to, for example, regulate a land use. *Yee*, 503 U.S. at 522–23. Because she says *Johnson* impermissibly forecloses any takings claim arising from a state using its police power writ large, she insists that *Johnson* must be overruled.

We see things differently. As noted above, *Johnson* staked our Circuit's position on the specific issue in Hadley's case— whether the Fifth Amendment requires compensation when police damage property while executing a valid search warrant. The answer is no. *Johnson*, 635 F.3d at 336. And, as discussed above, *Johnson*'s application in the law-enforcement context is well supported by precedent from our sister circuits and the Supreme Court. Hadley points us to no authority

showing this position is categorically wrong. Accordingly, we need not decide whether *Johnson* governs outside Hadley's context. "[J]udicial opinions are not statutes," and thus "[i]t is always important to understand opinions in light of their holdings and not take ambiguous statements for all they might be worth." *Vinning-El v. Evans*, 657 F.3d 591, 595 (7th Cir. 2011). We adjudicate the case before us and "general expressions must be read in light of the subject under consideration." *Lewis v. Zatecky*, 993 F.3d 994, 1003 (7th Cir. 2021) (quoting *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc)).

Indeed, *Johnson* itself suggests its holding might not apply outside of the context of law enforcement damaging property while executing a valid warrant. In rejecting Johnson's claim under the Fifth Amendment, *Johnson* relied on *AmeriSource Corporation v. United States*, 525 F.3d 1149 (Fed. Cir. 2008). *Johnson*, 635 F.3d at 336. There, the government had "seized a large quantity" of pharmaceutical drugs from a plaintiff while executing a valid search warrant. *AmeriSource Corp. v. United States*, 75 Fed. Cl. 743, 744 (2007). The plaintiff asked the government to return the drugs before they expired and lost their value, to no avail. *AmeriSource*, 525 F.3d at 1151–52. The Federal Circuit affirmed a decision by the Court of Federal Claims rejecting the plaintiff's takings claim. *Id.* at 1157. The Federal Circuit observed that seizing property for "law enforcement purposes" is "a classic example of the government's exercise of the police power to condemn contraband or noxious goods," which, the court concluded, is not a taking. *Id.* at 1153 (quoting *Acadia Technology, Inc. v. United States*, 458 F.3d 1327, 1332 (Fed. Cir. 2006)). Thus, in context, *Johnson* does not necessarily foreclose takings claims outside the "classic example" of police power: exercising law-enforcement authority.

Perhaps Hadley's argument means we will have some dif-
ficult cases in the future that will require us to consider *John-
son*'s broader application. But this is not one of those cases.
The facts of *Johnson* are analogous to those at bar, and its re-
jection of compensation under the Takings Clause for dam-
ages to property during the execution of a lawful search war-
rant remains good law. Hadley's wholesale critique of *John-
son*, based on the broadest imaginable reading of its language,
does not warrant revisiting it.

This is not to say Hadley was without recourse entirely.
She could have sued police alleging they violated the Fourth
Amendment by executing their search warrant unreasonably.
*E.g.*, *Cybernet, LLC v. David*, 954 F.3d 162, 168–69 (4th Cir.
2020) (noting that "excessive or unnecessary destruction of
property in the course of a search may violate the Fourth
Amendment"). But she did not. And though she would have
had to overcome a qualified-immunity defense, that burden
is not insurmountable. *San Jose Charter of Hells Angels Motor-
cycle Club v. City of San Jose*, 402 F.3d 962, 971–75 (9th Cir. 2005)
(denying qualified immunity where officers cut down a mail-
box, jackhammered a sidewalk, and broke a refrigerator while
executing a lawful warrant).

Bringing a claim like Hadley's under the Takings Clause,
rather than the Fourth Amendment, highlights deeper doctri-
nal tensions. Since the Founding, courts have analyzed police
searches under the Fourth Amendment—not the Fifth. *See
Customer Co. v. City of Sacramento*, 10 Cal. 4th 368, 386–88
(1995) (observing only two courts had awarded takings com-
pensation to property owners harmed by lawful police ac-
tions under state, not federal, constitutional provisions).
These two amendments serve distinct purposes. The Fourth

Amendment, unlike the Fifth, is the constitutional bulwark against law enforcement invading the sanctity of the home. *Lange v. California*, 594 U.S. 295, 309–10 (2021). The Fifth Amendment involves the government's taking of property and allows for just compensation, something courts can decide with a degree of certainty. *See Knick v. Twp. of Scott*, 588 U.S. 180, 191–94 (2019) (noting just compensation is owed immediately after a taking occurs and explaining methods of obtaining compensation). Both the government's decision to take property and a court's adjudication of the property's value can occur over an extended period, stretching years and allowing for a careful balancing of interests. *E.g.*, *United States v. Commodities Trading Corp.*, 339 U.S. 121, 123–24 (1950) (discussing how to value property taken).

In contrast, the Fourth Amendment does not require certitude. For example, law enforcement must show probable cause—requiring something more than "bare suspicion" but less than "proof of a crime"—to obtain a warrant and invade one's home lawfully. *Rainsberger v. Benner*, 913 F.3d 640, 648–49 (7th Cir. 2019) (Barrett, J.). And we analyze the execution of warrants in terms of reasonableness, eschewing rigid categories and the carefully drawn balancing of interests. *See United States v. Banks*, 540 U.S. 31, 35–36 (2003) (observing in the Fourth Amendment context that "no template is likely to produce sounder results than examining the totality of circumstances in a given case; it is too hard to invent categories without giving short shrift to details that turn out to be important in a given instance, and without inflating marginal ones").

Nonetheless, Hadley sued under the Fifth Amendment, not the Fourth. And *Johnson* forecloses her claim.

**C.  We have concerns about Hadley's proposed holding.**

As a reminder, Hadley urges us to hold that: "innocent homeowner[s] with no connection to the sought-after suspect[,] whose property the [government] intentionally and severely damage[s] through a military-style assault … to execute a warrant to apprehend [a] suspect … when the property otherwise would not have been damaged" are owed compensation.

Mindful of our decisions' precedential effect on future cases, we have concerns about the administrability of Hadley's proposed holding. It raises difficult questions, not least of which is, how does one determine innocence? For example, must an ancillary criminal proceeding conclude to show innocence before proceeding with a takings claim? Does having "no connection" with a suspect—as Hadley asserted herself—render the landowner "innocent"?

These questions highlight the problems with Hadley's proposed holding. On the one hand, she urges us to impose a bright line: that a taking occurred simply because the government damaged her property. But on the other hand, her proposed holding rests on fact-bound nuances and subtleties that would be difficult to apply and are unaddressed by our precedent. Regardless, we need not consider Hadley's proposed test further, as we apply *Johnson*'s rule to affirm.

### III. Conclusion

For the foregoing reasons, we AFFIRM.